HIGGINS, Judge.
 

 Plaintiffs, real estate brokers, sued the defendant as the owner of certain property in Vincennes place, this city, for damages, for the breach of a verbal contract said to have been entered into between the parties, under which the plaintiffs were given the exclusive agency to sell certain lots belonging to the
 
 *794
 
 defendant in the subdivision; and, in the alternative, to recover on a quantum meruit the value of the services rendered by plaintiffs in behalf of the defendant and accepted by him.
 

 The defendant denied liability on both grounds. Judgment was rendered in favor of the plaintiffs, as prayed for, in the sum of $8,754.75, on the theory that defendant had breached the exclusive sales agency agreement. Defendant appealed and this court reversed the judgment of the trial judge, holding) that the defendant had not granted the plaintiffs an exclusive agency. In connection with the alternative demand, we. remanded the case for the purpose of receiving further evidence. 174 La. page 880, 141 So. 865, 868.
 

 In the second trial additional evidence was offered and our learned brother below ren-' dered judgment in favor of the plaintiffs in the sum of $5,000. Defendant has again appealed.
 

 Defendant questions thé correctness of the decision on the following grounds: (1) That, if there is an ordinary sales agency contract between the plaintiffs and the defendant, recovery must be upon the agreement and not upon a quantum meruit and that the evidence shows there was such a verbal contract; (2) that defendant was not liable on the alternative demand, because it was never contemplated that the plaintiffs would charge him for services rendered in connection with the development of the subdivision, but only a 5 per cent, commission for the actual sale of lots therein; (3) that the amount awarded by the trial judge is excessive.
 

 Taking up these issues in the above order, we note that the first point was raised in connection with the defense in the original trial. In reversing the original decision of the lower court, we entered the following decree:
 

 “The judgment is set aside, plaintiffs’ demand, based on a contract, is rejected, and plaintiffs’ demand, based on a quantum meruit,, is remanded to the lower court for the reception of further evidence thereon, and for disposition according to law; plaintiffs to pay the costs of this appeal, and the costs of the trial below on the contract demand ; the remaining costs to abide the final decision of the case.”
 

 Therefore, it will be seen that the only issues that could be presented to the trial court were the question ot the liability of the defendant on a quantum meruit basis, and the value of the alleged beneficial services rendered to the defendant.
 

 If defendant was dissatisfied with our original decree and felt that we should have reserved his right to again urge the issue now presented, it was his right to have the matter called to our attention on an application for rehearing. The defendant failed to do so and, consequently, he is now foreclosed by the decree in connection with our original opinion, from again raising this point. Kennon v. Brooks-Scanlon Co., 148 La. 120, 86 So. 675.
 

 With reference to the second issue, the experts who testified for both sides agreed that where a real estate broker originates the idea of consolidating several unvaluable pieces of property ‘belonging to different owners, for the purpose of creating a sub
 
 *796
 
 division on a modern basis, with such conveniences as to attract prospects, that the broker, as developer, is entitled to some reward for his plan and supervisory services. In some instances, this reward is in the form of shares of stock in the holding corporation. In other instances, an increase in the usual 5 per cent, commission. And in rare cases, where the property is easily marketable, the broker permits the value of his services to be included in the usual 5 per cent, commission. However, it is never contemplated that the broker shall perform services as the developer and then not receive any reward whatsoever, by the owner failing to agree
 
 to
 
 a sales agency contract.
 

 Miles Kernaghan, one of the partners of the plaintiffs’ copartnership, testified that, because of the strenuous efforts exerted and time consumed in originating the plan and seeing that it was carried to completion, that he certainly thought his firm would be compensated in some way therefor. . 1-Ie further states that it was never any one’s remotest idea that his efforts and services were to be considered a gratuity.
 

 The defendant testifies that he wanted to be fair and did not want the benefit of the plaintiffs’ services gratis; that he felt that plaintiffs were acting primarily in behalf of Mr. Montegut, who owned two squares in the rear of plaintiffs’ three squares; that his engineer, Mr. Theard, supervised the work and he paid all the bills for the improvements direct; and that the plaintiffs would be satisfied with the usual broker’s commission of 5 per cent, on all sales made by him.
 

 We are convinced, because of the great amount of time that the members of plaintiffs’ firm and its employees devoted to the project and its development, that it cannot be fairly and reasonably said that the plaintiffs were not to receive some remuneration therefor. This is particularly true since the defendant accepted and received the advantages and benefits of the plaintiffs’ efforts and at no time protested or warned plaintiffs’ representatives .that remuneration or reward of some kind therefor would not be forthcoming, in due course.
 

 Finally, is the sum awarded plaintiffs unreasonable? The evidence shows that Dr. P. J. Wolfe owned a square of ground fronting on Pontainbleau drive. Defendant owned three squares of ground immediately in the rear thereof, and Mr. H. L. Montegut owned two squares of ground in the rear of the defendant’s property. There was no means of egress and ingress to the defendant’s and Mr. Montegut’s property through Pontainbleau drive. Plaintiffs’ representatives conceived the idea of running a street through the center of all' of these squares, connecting with Pontainbleau drive, which had been recently opened and had the effect of giving defendant’s and Mr. Montegut’s property added value and desirability for subdivision purposes. After a number of conferences with the respective owners, plaintiffs succeeded, on September 5, 1925, in having Dr. Wolfe sign an agreement allowing defendant and Mr. Montegut to place a 24-foot roadway and two 8-foot sidewalks through the center of his property, in consideration of the sum of $6,000 cash. As an additional consideration for this right, the sidewalks and the streets were both to be paved, sewerage, subsurface drainage, water, and gas mains and
 
 *798
 
 electric facilities were to be installed at Mr. Montegut’s and defendant’s expense. On September 11, 1925, plaintiffs bad defendant ratify, in writing, the agreement with Dr. Wolfe.
 

 Mr. Montegut and the defendant employed Mr. Alfred Theard as an engineer for the purpose of figuring the cost of the proposed improvements and supervising their installation for a fee of $3,000, three-fifths of which was to be paid by Mr. Uthoff and two-fifths by Mr. Montegut. Plaintiffs’ representatives then drafted the restrictive clauses for this residential subdivision and selected a name for it. By having the city authorities close some of the other streets between the squares and convey the abandoned streets to the respective property owners in' certain proportions, Dr. Wolfe agreed to forego the cash consideration of $6,000 and defendant obtained two lots of ground therefrom, which had an estimated value of $8,000 at that time. Plaintiffs met with serious opposition from Mr. Leo Fellman who owned property adjacent to the proposed Vincennes place, since it was planned to set the rear of the houses to be constructed in the new subdivision towards Mr. Fellman’s land. After considerable negotiations, this matter was eventually satisfactorily adjusted.
 

 Plaintiffs’ version is that before the improvements were installed, defendant’s three squares of ground were worth about $45,000; that after all of the improvements were completed, the property had a minimum value of $175,095; and that plaintiffs are entitled to the customary 5 per cent, commission for originating the idea and supervising the wort, or a fee of $8,754.75.
 

 Defendant states that he entered directly into all of the contracts for the improvements ; that his engineer, Mr. Theard, supervised their installation; that all bills in connection with the matter were paid direct by him .to the various contractors and parties performing the work and, therefore, plaintiffs’ supervision was unnecessary, or of very little value to him.
 

 Several experts were placed on the stand by both parties and they agreed that in cases where a real estate broker develops a subdivision, three things are taken into consideration in fixing his remuneration: (1) The idea, plan, or creative work; (2) the supervision of the installation of the proposed improvements ; and (3) the actual sale of the property to prospective purchasers. There is a difference of opinion among them as to the proper way of computing the value of the services and as to the extent of the percentage to be charged. In some instances it was said that the commission for both the sale of the land and the development of the subdivision would amount anywhere from 10 to 30 per cent.; others stated that it was also the practice to accept a part of the common stock of the holding corporation, so that the broker would be rewarded only in the event that the proposition proved to be profitable to the owner. The great preponderance of the expert testimony is to the effect that the compensation to be paid is usually agreed to by the parties in advance.
 

 In the instant ease, in the contract of September 11, 1925, between plaintiffs and defendant, it was agreed that the plaintiffs’ commission was to he 5 per cent, gross on all sales. It is admitted that this commission
 
 *800
 
 included, tlie services rendered by plaintiffs in originating the plan and supervising the installation of the improvements, as well as the advertising and the actual sale of the property to prospective purchasers. It is conceded that the plaintiffs did not advertise or sell any of the land and, consequently, are not. to receive any consideration therefor. All of the witnesses agree that the most important factor is the selling of the land. Under plaintiffs’ way of computing the value of their services, i. e., 5 per cent, of $175,095, or a fee of $8,754.75, plaintiffs would have been required, in addition to previous services, to advertise the property at their expense and sell all of the lots of the subdivision, to earn that amount. There would have to be deducted from the $8,754.75, the actual cost of advertising and the commission paid to other brokers who secured a purchaser, it being conceded that this amounted to 2% per cent., or half of the commission.
 

 While it is true that the plaintiffs’ representatives devoted part time, covering a period of about one year, to the matter, Mr. Theard, the engineer, was similarly employed for practically the same length of time. Mr. Theard received a fee of $3,000 for his services, and we believe, taking all of the facts and circumstances into consideration, that a similar amount would be a fair and adequate remuneration for the services of the plaintiffs.
 

 For the reasons assigned, the judgment appealed from is amended by reducing it from the sum of $5,000 to the sum of $3,000 and, as thus amended, it is affirmed, appellees to pay costs of appeal.