316 So.2d 858 (1975)
GAUGUIN, INCORPORATED
v.
John W. SPRING et al.
John W. SPRING et al.
v.
Reed ERICKSON et al.
Nos. 10301, 10302.
Court of Appeal of Louisiana, First Circuit.
June 30, 1975.
Rehearing Denied August 26, 1975.
Frank M. Coates, Jr., Baton Rouge, for plaintiff-appellant in Nos. 10301 and 10302.
Ernest E. Hartenstine, Denham Springs, for defendant-appellee in Nos. 10301 and 10302.
Before LANDRY, BLANCHE and YELVERTON, JJ.
YELVERTON, Judge.
This is a sequel to another case involving these parties. In Gauguin, Inc. v. Addison, et al., 288 So.2d 893 (La.App. 1 Cir. 1974), we determined that John W. Spring *859 and Spring's Thunder Agency, Inc., were not entitled to the benefit of liens under LSA-R.S. 9:4801 and 4812 for enforcement of their alleged monetary claims against Erickson and Gauguin, Inc., for the reason that the preliminary review of the relationship between Spring and his agency on the one hand, and Erickson and the corporation (Gauguin, Inc.), on the other, revealed that Spring was at best only a general contractor without a recorded contract. We remanded the case for a trial on the merits as to the basic dispute. We now have the case before us once more, this time for the review of the trial court's disposition of the basic dispute. The basic dispute is this: Spring and his real estate agency (Spring's Thunder Agency, Inc.), undertook to develop for subdivision purposes a 320 acre tract of land then owned by Reed Erickson. Spring's expectation of reward was to be in the form of realtor's fees resulting from an exclusive listing contract for the sale of the more than 200 residential lots and 30 acres of commercial property in the subdivision. When the subdivision was 80%-90% ready for the market, illness forced Spring to retire from active work. Erickson gave the exclusive listing contract to another. Spring demanded to be paid on the basis of the value of his work. Erickson refused. This suit followed. The trial judge awarded Spring $19,500 on quantum meruit. Defendant Erickson appealed. We affirm this award.
A more detailed discussion of the facts will be necessary in order to illuminate the issues. Before discussing these facts and issues, however, we will clarify the identity and alignment of the parties in these consolidated cases. John W. Spring and Spring's Thunder Agency, Inc., collectively we will simply refer to as "Spring", since they are for all practical purposes one; Spring's Thunder Agency, Inc., is a wholly owned corporation under the name of which Spring operated his real estate agency business. The 320 acre tract of land in Livingston Parish on which the subdivision is located was owned individually by Reed Erickson throughout all times relative to this dispute. Erickson sold the property to Gauguin, Inc., after Spring got sick and ceased to be involved with the subdivision. The trial court recognized that Gauguin, Inc., had no part in this dispute and it was dismissed at the conclusion of the trial. No appeal was taken by Spring from the dismissal of Gauguin, Inc. Accordingly, despite the apparent procedural complexities of consolidated cases and multiple defendants, the dispute here is quite simply one between Spring as plaintiff and Erickson as defendant.
Spring did not appeal or answer the appeal. Therefore, the only issues before this court on appeal are: (1) whether plaintiff is entitled to anything at all in this suit, and (2) if so, whether the amount of $19,500 was excessive, as contended by defendant. Spring and Erickson each testified, as did engineers and contractors and their secretaries and other persons who were knowledgable of work that went into the subdivision. From this testimony the basic facts are relatively undisputed. We will now set forth these facts and then we will proceed to a discussion of the two issues.
THE FACTS
Sometime prior to 1969 Erickson was looking for property for investment purposes in Livingston Parish. He engaged Spring to help him. After looking at several tracts, he purchased a 320 acre tract from Spring. In 1969 an oral agreement was reached that Spring would develop the tract as a residential subdivision. By this oral agreement it was understood that Spring would receive the rights to an exclusive agency to sell the subdivision after its development. The agreement was reached on July 15, 1969. Spring undertook the development vigorously, spending the next three years and three months, or until October 18, 1972, in pursuit of that undertaking. The expectation of both parties was that Spring would be compensated *860 for his efforts by having the exclusive listings for sale of the more than 200 residential lots and more than 30 acres of commercial property expected to be marketable when the subdivision was ready for opening. The record is replete with evidence that Spring worked diligently throughout this time developing the subdivision. They named it "Franklin City, USA". Spring arranged for the preliminary and the final surveys. He procured the road contract and supervised the laying out of roads. He was instrumental in obtaining a very favorable contract with Dixie Electric Membership Corporation, whereby this company agreed to spend some $190,000 of its own money to render the subdivision ready for electric utility service. During some portion of this three year period the 320 acres was apparently a favorite dumping spot for garbage, particularly by Baton Rouge residents. The record reflects that Spring undertook an ambitious program designed to eliminate the dumping problem. He sought and obtained the assistance of the Police Jury of Livingston in the enforcement of anti-dumping ordinances and he was instrumental in seeing to the prosecution of at least one person for the violation of the ordinance as an example to other offenders. The testimony is uncontradicted that he personally supervised every contract that was done on the property and that he was physically present on the property a considerable part of the time. Indeed, it would appear from the testimony that he was present on the property on nearly a daily basis.
It was different with Erickson. By his own admission he visited the property only two or three times during this three year period. However, while he did not visit the property very much, Erickson was quite aware of developments since he personally approved Spring's recommendation for the selection of engineers and contractors and his personal approval was a prerequisite to the payment of each of these persons. In fact, the total sum of $119,230.67 was expended by Erickson in the development of the subdivision on the basis of Spring's recommendation and under Spring's direct supervision.
In late 1972, when the subdivision was 80%-90% ready for the real estate market, Spring suffered a heart attack and was ordered by his physician to retire from active work. The date of the cessation of his activities in connection with the subdivision can be fixed at October 18, 1972. Erickson then proceeded to complete the subdivision with his own people and he gave the exclusive listing contract to another real estate business. Spring asked Erickson to give the exclusive listing contract to his son, but Erickson refused for the stated reason that the young Spring was not sufficiently experienced to handle the sales of a subdivision of that size. Spring was then faced with the understandably frustrating enigma of how to salvage some reward for his otherwise wasted efforts of over three years duration.
IS SPRING ENTITLED TO COMPENSATION BASED ON QUANTUM MERUIT?
In Kernaghan & Cordill v. Uthoff, 174 La. 880, 141 So. 865 (1932), plaintiffs were real estate agents who developed a subdivision for defendant based on a verbal agreement plaintiffs understood afforded them the exclusive agency to sell the lots. After developing the subdivision, plaintiffs sought to convert the oral contract into a written one by presenting to defendant a written contract giving them the exclusive agency to sell. Defendant refused to sign objecting to the use of the word "exclusive". Plaintiffs sued for the alleged breach of the contract and demanded damages equal to the commissions they would have earned based on an exclusive agency. In the alternative, they sought recovery on quantum meruit for the value of the services they rendered that were accepted by defendant. The Supreme Court denied plaintiffs' recovery based on breach of contract, finding that no exclusive agency contract was intended, then remanded the *861 case for the purpose of receiving further evidence bearing on the value of plaintiffs' services. Following remand, the matter was again appealed[1], and, in upholding an award (in a reduced sum) based on quantum meruit, the court said:
"We are convinced, because of the great amount of time that the members of plaintiffs' firm and its employees devoted to the project and its development, that it cannot be fairly and reasonably said that the plaintiffs were not to receive some remuneration therefor. This is particularly true since the defendant accepted and received the advantages and benefits of the plaintiffs' efforts and at no time protested or warned plaintiffs' representatives that remuneration or reward of some kind therefor would not be forthcoming in due course."
Subdivision Planning Engineers, Inc. v. Manor Development Corporation, et al., 290 So.2d 375 (La.App. 4 Cir. 1974) involved an agreement whereby plaintiff was unconditionally obligated to perform engineering and surveying services for the entire subdivision at a stipulated price. Because of the financial failure of the defendant developer, plaintiff did not fully perform the contracted services. The court held that plaintiff was entitled to be paid based on quantum meruit for services rendered, and remanded for a determination of the amount.
Jones, et al. v. City of Lake Charles, et al., 295 So.2d 914 (La.App. 3 Cir. 1974) was a suit to recover under a contract or alternatively on quantum meruit for repairs and materials supplied to a boat owned by the City of Lake Charles. The Third Circuit found from the evidence that no contract had been let to plaintiffs to repair the boat and therefore they could not recover based on a contract. However, they were found to be entitled to recovery based on quantum meruit, and the Third Circuit, in reaching its conclusions, stated the following which we consider applicable to the case before us:
"Quantum meruit is an equitable doctrine, based on the concept that no one who benefits by the labor and incidental materials of another should be unjustly enriched thereby. Under those circumstances the law implies a promise to pay a reasonable amount for the labor and materials furnished, even in the absence of a specific contract therefor. LSA-C. C. arts. 1965; 2292-2294; Bordelon Motors, Inc. v. Thompson, 176 So.2d 836 (La.App. 3 Cir. 1965); Lyman v. Richard, 217 So.2d 681 (La.App. 3 Cir. 1969).
"The general rule is that the plaintiff who establishes his right to be compensated on quantum meruit should recover as much as he reasonably deserves for his services and for the time and labor required for them. There is no specific test which must be applied to determine the reasonable value of such services. It is a matter of equity depending upon the circumstances of each case."
To say that the property did not benefit from Spring's work is to ignore the facts. While Spring's efforts were being expended on his part with the expectation that his reward would come from realtor fees in the sale of the property, his interests and the owner's interests during the development were identical in that both were interested in achieving the utmost value for the property as each would be benefited in direct proportion to the evaluation of the lots to be sold. Therefore, it was to Spring's interest that the subdivision be developed to sell well. During Spring's stewardship, nearly $120,000 was invested in improvements for subdivision development purposes, in addition to the $190,000 invested by the utility company. Erickson paid only $73,920 when he originally purchased the 320 acres in 1966. The improvements made during the three years and three months of Spring's stewardship *862 are reflected in the $450,000 sale price late in the year 1972, when Erickson sold the property to Gauguin, Inc. Spring worked constantly and diligently to assist in making the improvements that helped result in this increase in value. He served in a supervisory capacity throughout the 39 months the improvements were in the making. According to the testimony, he was successful in practicing economics in getting work done. His efforts were valuable in helping to obtain this increase in value. We therefore conclude that Spring is entitled to be compensated on the basis of quantum meruit, for the value of the work performed by him.
IS THE AMOUNT OF THE AWARD MANIFESTLY EXCESSIVE?
The trial judge awarded $19,500 to Spring. While written reasons were not handed down, and therefore we have no sure way of knowing the precise method of calculation he employed in determining this amount, we deem it more than coincidental that Spring was on the job for 39 months and that $19,500 divided by 39 months produces a quotient of $500 per month. We have already discussed the enhancement of value of the property under his stewardship and the obvious relationship between his efforts and the increase in value. There is also to be considered the time he spent on the project. Spring's testimony was that he spent most of every day there. The testimony of many other witnesses confirmed that he was present on a routine, daily basis. In an apparent effort to show how unimportant Spring's work was, that it would just as effectively be done by secretaries untrained in subdivision development, the defendant produced testimony of two successive secretaries in his office who handled the details pertaining to the nearly complete subdivision after Spring discontinued his work. Each of these secretaries testified that she spent 50% of her time on work related to that subdivision alone. Of course, each of these secretaries admitted to having no experience in connection with the development of a subdivision, and presumably it would take longer for them than it would for an experienced subdivision developer. Even so, these secretaries each devoted 50% of their time to the completion of development of a subdivision that was 80% to 90% complete when they took over, and their efforts lasted for several months before the property was sold to Gauguin, Inc. Throughout this time, neither of these secretaries went to the subdivision nor did either supervise personally any of the development work being completed. Undoubtedly, the trial judge gave some consideration to this testimony in evaluating the time spent by Spring.
Considering the weight to which a trial judge's findings of fact are entitled, considering also the increase in value which this property enjoyed under the active stewardship of Spring, and considering the uncontradicted testimony as to the vast amount of time Spring spent in the development of the subdivision, we believe that $500 per month for his compensation on the basis of quantum meruit is amply justified by the record.
We will amend the judgment in one respect. The trial court allowed legal interest from date of judicial demand. It is now settled that in a case in quantum meruit, legal interest is computed from the date of final judgment. Succession of Butler, 294 So.2d 512 (La.1974). The judgment will therefore be amended to allow interest from judgment date. Erickson is assessed with costs.
Amended, and as amended, affirmed.
NOTES
[1] 180 La. 791, 157 So. 595.