436 So.2d 719 (1983)
COMMERCIAL EMPLOYMENT SERVICE, INC.
v.
MORPHY, MAKOFSKY AND MASSON, INC.
No. CA-0586.
Court of Appeal of Louisiana, Fourth Circuit.
August 3, 1983.
*720 A.D. Barnes, Jr., New Orleans, for plaintiff-appellee.
A.D. Freeman, Charlotte A. Hayes, Satterlee, Mestayer & Freeman, New Orleans, for defendant-appellant.
Before GARRISON, BARRY and BYRNES, JJ.
BARRY, Judge.
The question is whether Morphy, Makofsky and Masson (Morphy), an engineering firm, owes Commercial Employment Service, Inc. (Commercial) a fee because Morphy employed Walid Rifai, a structural engineer. The trial court found plaintiff-Commercial failed to prove an agreement, but held there was a quasi-contract and Commercial was entitled to one-third of its customary fee.
Morphy asserts on appeal: (1) the lower court erred in allowing Commercial to recover under a quasi-contract; (2) the employment agency's actions violated LSA-R.S. 23:118(6) (the Private Employment Agency Law) and it should be denied any fee.

FACTS
Edward Morphy, president of the engineering firm, taught a graduate course at Tulane and met Rifai in 1979. Rifai was working for an engineering firm and discussed the possibility of employment with Morphy's firm. Morphy did not hire Rifai then because Rifai wanted to continue his studies.
Later Rifai visited Nation-Wide Employment Agency in response to an ad for an engineer. Jay Nelson, a counselor at Nation-Wide, interviewed Rifai and sent him on one unsuccessful job interview, after which Nelson did not contact Rifai.
In February, 1980, Nelson left Nation-Wide to become manager of Commercial. Nelson telephoned Morphy's office to solicit a job order and was informed by Ms. Olsen, the office manager, that the firm wanted to hire an engineer. Olsen told Nelson to send resumés and specified certain qualifications.
Nelson testified he couldn't recall "talking dollars or percentages" on the phone with Olsen or mailing her a fee schedule, *721 but he did mention to Olsen that Commercial was a "fee paid" agency. She responded that Morphy had "a history of pay fees" and "I'm sure that would be no problem." Nelson construed the conversation as a "job order," and submitted an order to a national employment network and at Commercial's expense placed several classified ads listing the qualifications described by Olsen.
Contrary to Nelson's recollection, Olsen could not specifically recall her conversation with Nelson but testified, "I would normally say to anyone who called that if the person had [sic] the right credentials came along, we would be interested." While she could not remember giving Nelson the qualifications for an engineer, she said that, "Any agency that would have called I would have given them that description of our requirements." Olsen denied discussing fee arrangements with Nelson and stated, although she would expect an employment agency to receive a fee, she would not necessarily expect the employer to pay the fee. She knew Morphy had paid a fee for one design engineer, but indicated she paid an agency fee for her position at Morphy.
Nelson then phoned Rifai and said he had a job order from Morphy and asked if he was interested. Nelson said Rifai was amenable to an interview but it could not be scheduled until Morphy returned from vacation.
Around July 30, 1980, Morphy found two copies of Rifai's resumé on his desk, one stamped "Commercial Employment Service." Morphy testified he knew Rifai was registered with an employment agency and instructed Olsen to find out Rifai's salary requirements. Olsen called Nelson at Commercial, told him Morphy was interested in Rifai, and was told Rifai's current salary and anticipated salary demand. Nelson testified Olsen called him a few days later, at Morphy's request, to determine if Rifai was serious about wanting to change jobs or whether he was merely a "recruit" by Commercial. Olsen was unsure whether she called Nelson a second time, but did recall telling Nelson that Morphy did not want to "pirate" Rifai from his current employer.
After receiving assurance from Nelson that Rifai was seriously interested, Morphy contacted Rifai directly and interviewed him. Both men testified Morphy asked Rifai if Rifai had any obligation to the employment agency, to which Rifai replied "No." Morphy hired Rifai at a salary of $27,000 and when Commercial found out, this suit was filed.
From this evidence the Trial Judge concluded:
"The one fact that stands out, based on all of the testimony, is that plaintiff has failed to prove, by a preponderance of the evidence that the defendant agreed to pay for the services of the plaintiff in keeping with the `fee schedule' of the plaintiff. No one, not even plaintiff, knows for certain that a fee schedule was ever discussed. Defendant denies ever having received a fee schedule and plaintiff presents no believable evidence that one was ever sent." (Emphasis in original)
Commercial abandoned its appeal on this point, so that finding is not at issue.
However, the trial court declared:
"This Court finds that there were actions by the plaintiff which would lead to the establishment of a quasi-contract. These include: 1.) Discussions by plaintiff and Ms. Olsen regarding the need for the services of a `Design Engineer.' This is confirmed by Ms. Olsen; 2.) Placement of ad in daily newspaper; 3.) Contacting Walid Rifai to secure a resumé 4.) Referred the `order' to plaintiff's national referral service, etc.
See rationale of: Hobbs v. Central
 Equipment Rental
 382 So.2d 238
 (1980)
This Court concludes that a quasi-contract existed between these parties and that said contract is enforceable in Louisiana."

RECOVERY UNDER THE PRINCIPLE OF QUASI-CONTRACT
The principles of quasi-contract are in LSA-C.C. Arts. 2292-2294 and have been *722 applied in countless cases where, absent an express agreement or meeting of the minds, one party performed services for the benefit of another. Kernaghan & Cordill v. Uthoff, 180 La. 791, 157 So. 595 (1934); Hobbs v. Central Equipment Rentals, 382 So.2d 238 (La.App. 3d Cir.1980). Actions which give rise to a quasi-contract were delineated in Hobbs, supra, at p. 244:
Quasi contracts arise without agreement from the lawful and purely voluntary act of a man from which there results any obligation whatever to a third person, and sometime a reciprocal obligation between the parties. LSA-C.C. Articles 2292, 2293, 2294. The essential elements of quasi contracts are a benefit conferred on the defendant by the plaintiffs, an appreciation by defendant of such benefits, and acceptance and retention by the defendant of such benefits under circumstances such that it would be inequitable for him to retain the benefits without payment of the value therefor. [citations omitted]
In Kernaghan & Cordill, supra, our Supreme Court held a real estate broker, who had originated the idea of consolidating several pieces of property for a subdivision, was entitled to compensation under quasi-contract, even though the broker and the property owner failed to agree to a contract. The court noted that "... because of the strenuous efforts exerted and time consumed [by the broker] in originating the plan and seeing that it was carried to completion,... he certainly thought his firm would be compensated in some way therefor. He further states that it was never any one's remotest idea that his efforts and services were to be considered a gratuity."
In awarding a fee in Kernaghan & Cordill, supra, the court said:
"We are convinced, because of the great amount of time that the members of plaintiffs' firm and its employees devoted to the project and its development, that it cannot be fairly and reasonably said that the plaintiffs were not to receive some remuneration therefor. This is particularly true since the defendant accepted and received the advantages and benefits of the plaintiffs' efforts and at no time protested or warned plaintiffs' representatives that remuneration or reward of some kind therefor would not be forthcoming, in due course."
Morphy argues that Nelson never furnished a letter of confirmation or a fee schedule; hence, Morphy had "every reason to believe that the prospective employee (Rifai) is under contract with the agency to pay the agency for finding said employee a job." However, as Morphy points out in his brief, both he and Rifai testified most emphatically that Rifai assured Morphy he had not contracted with Nelson or Commercial to pay any employment fee. We note that Morphy and Olsen both admitted Morphy had paid employment agency fees for engineers on one or two previous occasions. It is significant that Morphy, an experienced businessman, knowing Rifai was not obligated to pay a fee, could hardly believe Nelson's agency would perform services gratuitously.
This Court feels the rationale in Kernaghan & Cordill, supra, applies here. Nelson's activities included a call to Morphy's office and obtaining a structural engineer job description from Olsen; running ads for that position; contacting Rifai, a qualified engineer, about the job; sending Rifai's resumé to Morphy; and providing salary and other information about Rifai to Morphy, at Morphy's request. All those actions were the "procuring cause" of Rifai's employment with Morphy and we agree that Commercial should be compensated for its successful efforts.

EFFECT OF LSA-R.S. 23:118(6) ON PLAINTIFF'S RECOVERY
Morphy argues, alternatively, that Nelson's actions violated a provision of the Private Employment Agency Law and Commercial should be barred from recovering a fee under Badon's Employment, Inc. v. Smith, 359 So.2d 1284 (La.1978). At the time of this case, R.S. 23:118 provided in pertinent part:

*723 "An employment agency shall not engage in any of the following activities of conduct:...
(6) Direct an applicant to an employer for the purpose of obtaining employment without having first obtained a bona fide order therefor; however, a qualified applicant may be directed to an employer who has previously requested that he regularly be accorded interviews with applicants of certain qualifications. Likewise, an employment agency may attempt to sell the services of an applicant to an employer from whom no order has been received as long as this fact is told to the applicant before he is directed to the employer."
In Badon's Employment, Inc., supra, the court held that an employment agency which violates such a provision forfeits any fee. Morphy contends Nelson violated this provision because he did not have a "bona fide order," nor was he directed by Morphy's office to "regularly accord interviews with applicants of certain qualifications." Both of these assertions are based on disputed factual contentions.
Although Olsen denied placing a job order, Nelson testified he was given one by Olsen. Nelson also said Olsen directed him to send her resumés of any qualified applicants. Olsen admitted she told Nelson her firm would be interested in anyone with "the right credentials." Even if the Trial Judge had not accepted this testimony, we do not believe Nelson's activities contravened the statute. Both prohibitions in R.S. 23:118 forbid an employment agency from "direct[ing] an applicant to an employer." It was clearly shown that Nelson neither set up an interview for Rifai with Morphy nor directed Rifai to apply. Nelson merely sent Rifai's resumé to Morphy for consideration and was waiting for authorization to schedule an interview when he learned Morphy had contacted Rifai directly.
We feel the statute was obviously designed to protect job applicants from wasting time and suffering possible embarrassment by going to a prospective employer under the mistaken belief the employer agreed to an interview. In view of Rifai's vehement statement that Nelson never mentioned a job prospect with Morphy, and the fact that Rifai's interviews with Morphy were arranged without Nelson's knowledge, we discern no possible violation of R.S. 23:118(6).
Commercial is, therefore, entitled to a "reasonable fee" on the basis of quasi-contract and quantum meruit. Neither Commercial nor Morphy contests the amount of the $1,840 judgment (only one third of Commercial's usual percentage).
The judgment of the district court is affirmed with appellant to pay all costs.
AFFIRMED.