464 So.2d 374 (1985)
William Len BUSBY and Linda Diane Collum Busby
v.
PARISH NATIONAL BANK.
No. CA 84 0018.
Court of Appeal of Louisiana, First Circuit.
February 26, 1985.
Writ Denied May 3, 1985.
*375 Sam J. Collett, Bogalusa, Robert Hackett, New Orleans, for plaintiffs.
Edward A. Griffis, Bogalusa, for defendant.
Before COLE, CARTER and LANIER, JJ.
COLE, Judge.
The primary issue presented in this appeal is whether or not defendant made certain misrepresentations to plaintiffs, as a result of which plaintiffs sustained damages.
Prior to 1980 plaintiffs, William and Linda Busby, operated a business known as Busby's Stereo in Bogalusa, Louisiana. During 1980 plaintiffs decided to move their business to a different location in Bogalusa in an effort to increase sales. *376 Plaintiffs borrowed $90,000 from defendant, Parish National Bank (Bank), for this purpose. In October plaintiffs borrowed an additional $10,000 from the Bank to be used as operating capital. On February 13, 1981 plaintiffs made a new loan with the Bank for $119,252.93. The proceeds of this loan were used to consolidate plaintiffs' existing loans to the Bank (with the exception of an existing Small Business Administration loan) and to provide additional operating capital. The note representing this loan was secured by mortgages on plaintiffs' old and new business locations, a second mortgage on their home and a chattel mortgage on the business' inventory and equipment. Plaintiffs took out an additional $10,000 loan from the Bank on April 14, 1981 to provide needed operating capital.
Plaintiffs' business experienced financial difficulty throughout 1981. During the summer a management analyst with the Small Business Administration (S.B.A.) consulted with plaintiffs and noted a need for additional operating capital, since the business was not generating enough volume to pay its regular obligations. To improve their financial situation plaintiffs sought an S.B.A. guaranteed loan. The Bank had already agreed to give plaintiffs a loan if an S.B.A. guaranty could be obtained. Plaintiffs planned to use the proceeds of this loan to repay their existing loans to the Bank and to provide operating capital.
While preparing their S.B.A. application, plaintiffs had several meetings with Bank officials concerning the proposed loan. It was primarily during these meetings that certain misrepresentations (more fully described below) were supposedly made to plaintiffs by Bank officials. Plaintiffs were accompanied by legal counsel at these meetings. The actual preparation of the S.B.A. application was performed by a C.P.A. firm employed by plaintiffs.
At a meeting in New Orleans on August 10, 1981, plaintiffs submitted their application to the S.B.A. At that time Mr. Roger Ayres, chief of the S.B.A. finance division, made a preliminary review of the application. Mr. Donald Olivier and Mr. Asa Miller, president and vice-chairman of the Bank respectively, attended this meeting to support plaintiffs' application.
Olivier and Miller testified they became concerned at this meeting as to the extent of plaintiffs' financial difficulties, when certain information was revealed of which plaintiffs had not previously informed them. As a result, the Bank began a review of plaintiffs' loan file. In apparent direct contradiction, plaintiffs testified Mr. Olivier assured them as they left this meeting the Bank would help even if the S.B.A. application was not approved.
On Friday, August 21, 1981, Mr. Ayres notified Mr. Busby the S.B.A. had turned down his application. On the following Monday Mr. Busby met with Mr. Miller at the Bank. According to Busby, he told Miller he would fall back on his original store and work with the Bank to clean up his debts. He testified Miller told him to hold off doing anything because the Bank was going to help him. Mr. Miller denied making any such statement.
On the following day, the Bank began foreclosure proceedings on plaintiffs' February 13th loan, upon which a payment had not been received since May 31st. All of the assets mortgaged as security for this loan were seized and eventually sold at sheriff's auction. Plaintiffs filed for bankruptcy in October of 1981. A net loss of $91,690.55 was sustained by the Bank.
Plaintiffs' filed the present suit against the Bank approximately one year after the foreclosure proceedings were initiated. They alleged a wrongful seizure and breach of a fiduciary obligation. By subsequent amendments, plaintiffs asked for a jury and alleged "tortious fraud and/or negligent misrepresentation" on the part of the Bank. Acting upon the Bank's peremptory exception the trial court later rendered judgment dismissing plaintiffs' cause of action insofar as it related to the alleged wrongful seizure (this judgment is now final)[1] *377 but declined to dismiss the cause of action as it related to fraud, breach of fiduciary obligation and negligent misrepresentation. This court further failed to sustain objections of res judicata and estoppel. The matter went to trial before a jury and at the close of plaintiffs' case the trial court granted a partial directed verdict dismissing the claim of fraud. The claims for alleged breach of fiduciary obligation and negligent misrepresentation were considered by the jury and it returned a verdict in favor of plaintiffs' for $75,000. The Bank appeals the judgment rendered for $75,000; plaintiffs answer the appeal seeking an increase in the amount awarded.
The Bank assigns seven specifications of error for our consideration, arguing primarily there was no misrepresentation and the absence of any fiduciary relationship. In its brief, the Bank expresses its preference for disposition of this appeal on the merits of plaintiffs' allegations, rather than on a procedural basis.[2]
We reverse, finding no misrepresentations and the absence of a fiduciary relationship between plaintiffs and the Bank.
In order to recover for negligent misrepresentation a plaintiff must establish the following essential elements: 1) a legal duty on the part of the defendant to supply correct information to the plaintiff, 2) a breach of this duty, and 3) damages to plaintiff as a result of his justifiable reliance upon the misrepresentation(s). Braydon v. Melancon, 462 So.2d 262 (La. App. 1st Cir.1984);[3]Josephs v. Austin, 420 So.2d 1181 (La.App. 5th Cir.1982), writ denied, 427 So.2d 870 (La.1983); Beal v. Lomas and Nettleton Co., 410 So.2d 318 (La. App. 4th Cir.1982).[4] Here, plaintiffs' claim of negligent misrepresentation apparently centers around the following three alleged misrepresentations: 1) the Bank led plaintiffs to believe the guaranty ratio it would propose to the S.B.A. would be 50/50, i.e., the Bank and the S.B.A. would each assume the risk of 50% of the loan; 2) the Bank represented it would complete and submit an I-4 form in connection with plaintiffs' S.B.A. application; and, 3) Bank officials stated they would "help" plaintiffs even if the S.B.A. application was not approved.
In fact, the guaranty proposal submitted to the S.B.A. by the Bank suggested a 90/10 ratio (90% by the S.B.A., 10% by the Bank). However, Olivier and Miller deny they ever represented the Bank would submit a 50/50 proposal to the S.B.A. Plaintiffs admit neither Olivier nor Miller ever stated this explicitly, but assumed the loan would be proposed on a 50/50 basis because they informed the Bank it would be futile to submit it on any other basis.
With respect to the second alleged misrepresentation, it was established the Bank never completed an I-4 form to accompany plaintiffs' application. This form includes the percentage of the loan the Bank is willing to guaranty. Mr. Miller explained his failure to complete an I-4 form as being a result of the hurried manner in which the completed application was submitted to the S.B.A. However, he stated the S.B.A. was furnished by letter with the primary information contained on this form.
*378 The denial of plaintiffs' loan application was the only injury to plaintiffs which could have resulted from these two alleged misrepresentations. However, Mr. Ayres of the S.B.A. stated unequivocally neither the Bank's proposed guaranty ratio nor the absence of an I-4 form was a factor in the decline of plaintiffs' application. He explained the S.B.A. had all the information an I-4 form would have provided and it was not unusual for a Bank to supply the information by letter or telephone. He stated the primary reason for this action was the belief plaintiffs would be unable to repay the loan. Thus, even conceding for the sake of argument the alleged misrepresentations were made, no resulting injury to plaintiffs has been shown. Accordingly, plaintiffs have failed to establish a right to recover for these alleged negligent misrepresentations.
The final misrepresentations relied upon by plaintiffs for recovery are alleged statements by Mr. Olivier and Mr. Miller to the effect plaintiffs were not to worry because the Bank would "help" them even if the S.B.A. did not approve their loan. Steve Blackwell (an employee of Busby's Stereo and Mr. Busby's brother-in-law) and William Magee (the attorney assisting plaintiffs with their S.B.A. application) each testified they heard Bank officials make at least one statement of this nature. Plaintiffs contend these general statements lulled them into a false sense of security, although they admit there was never any specific discussion as to what would occur in the event the S.B.A. turned down their application. Olivier and Miller both deny making any statements of the type alleged by plaintiffs.
Plaintiffs did not indicate the precise nature of the "help" they expected from the Bank. However, the only two logical possibilities were for the Bank to have either granted them an extension of time to make their overdue loan payments or for the Bank to have granted them a loan without an S.B.A. guaranty.
The burden is upon the obligor to establish an agreement for an extension of time to make payments on a note. Andrus v. Andrus, 326 So.2d 882 (La.App. 3d Cir. 1976). In order to do so the obligor must show the promise to forbear was made for a lawful cause. Id. No cause for such a promise has been shown in the present case. In view of this fact and the fact no specific agreement was made, there was no basis for plaintiffs to rely upon the alleged statements as a promise by the Bank to forbear.
We also find plaintiffs could not justifiably rely on these statements as a commitment to provide a loan regardless of the outcome of their S.B.A. application.
Mr. Busby was an experienced businessman. Additionally, plaintiffs were accompanied by legal counsel at two of their meetings with Bank officials. Yet plaintiffs never sought clarification of what help the Bank would offer if their S.B.A. application was declined. It seems inconceivable an experienced businessman would rely upon statements such as those alleged, without seeking to reach a specific agreement with the Bank. Under these circumstances, we find plaintiffs could not have reasonably construed the alleged statements as an unqualified loan commitment from the Bank.
In any event, we find no evidence of detrimental reliance by plaintiffs upon the alleged misrepresentations. Plaintiffs do not allege they took any particular action in reliance upon the alleged misrepresentations. Rather, they contend they could have obtained the necessary financing from other sources to save their business, if not for their reliance on the Bank's misrepresentations. However, plaintiffs testified they made no attempts to secure other means of financing due to this reliance.
The evidence presented by plaintiffs to show their ability to obtain other financing is unconvincing. It would have required a sum of approximately $90,000 to satisfy plaintiffs' overdue note at the Bank. In addition to their obligations to the Bank, plaintiffs were indebted in a significant amount to several suppliers and individuals. They had previously mortgaged all of *379 their assets. Further, the financial condition of their business was very poor at the time in question. The money generated by it was insufficient to meet its current expenses. Mr. Busby admitted he had briefly discussed the possibility of bankruptcy with an attorney, even prior to the submission of his S.B.A. application. Significantly, plaintiffs did not indicate by what means they expected to meet any additional obligations.
The testimony of Mr. Stanley Mizell was the only evidence presented by plaintiffs to show the availability of other financing. He testified he was interested in merging his business with plaintiffs, but Mr. Busby would not discuss the possibility with him until he found out what the Bank was going to do to help him. Mr. Mizell, who is a personal friend of Mr. Busby as well as his current employer, stated he could have raised the money necessary to pay off plaintiffs' overdue note by mortgaging some of his property. However, even at trial Mr. Mizell had no specific knowledge as to the financial condition of plaintiffs' business or the extent of its obligations at the time in question. Under these circumstances, we find it highly speculative whether Mr. Mizell would have provided the necessary money if he had been fully apprised of the financial difficulties of plaintiffs' business.
Further, there was absolutely nothing to prevent plaintiffs from seeking financial assistance from other sources. In fact, plaintiffs apparently did so at least once. The senior loan officer of Washington Bank and Trust testified she discussed the matter with plaintiffs briefly but was unable to grant them a loan due to their general financial situation. For the above reasons, we find plaintiffs have not established a right to recover on the basis of negligent misrepresentation.[5]
Plaintiffs also argue the Bank had a fiduciary duty to them which it breached by misleading them in the manner alleged above. Plaintiffs contend a fiduciary relationship arose by virtue of the Bank's superior knowledge in this area and its awareness of plaintiffs' reliance upon its assurances.
However, we find no basis in our law for the imposition of a fiduciary duty upon the Bank as urged by plaintiffs. The relationship between the parties does not fall into any of those situations in which a fiduciary duty is imposed by law. Further, the fact plaintiffs were accompanied by counsel at meetings with bank officials indicates an awareness the Bank was not acting in a fiduciary capacity. For these reasons, we find no fiduciary relationship existed between plaintiffs and the Bank.
Finally, plaintiffs argue they are entitled to recovery under the theory of quasi-contract. The general concept of quasi-contract is based on the principal of preventing unjust enrichment. Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967). In order to establish the existence of a quasi-contract there must be: a benefit conferred on the defendant by the plaintiff; an appreciation by the defendant of the benefit; and, acceptance and retention by the defendant of the benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value therefor. Com. Emp. v. Morphy, Makofsky & Masson, Inc., 436 So.2d 719 (La.App. 4th Cir.1983); Hobbs v. Central Equip. Rentals, Inc., 382 So.2d 238 (La.App. 3d Cir.), writ denied, 385 So.2d 785 (La.1980).
*380 Plaintiffs have failed to establish the existence of any of these elements in the present case. Plaintiffs conferred no benefit upon the Bank by virtue of which it was unjustly enriched. Thus, we reject this argument.
For the above reasons, we find plaintiffs have established no basis upon which they are entitled to recovery in the present case. Accordingly, we reverse the trial court judgment in favor of plaintiffs. All costs of this appeal are to be paid by plaintiffs, William and Linda Busby.
REVERSED.
NOTES
[1] The parties agree wrongful seizure is not an issue in this appeal. The trial jury was instructed wrongful seizure was not at issue for them to consider.
[2] Due to the nature of plaintiffs' claims, we deem it appropriate to treat their merit. We do not, therefore, address the validity of the procedural concepts of res judicata and estoppel. As regards plaintiffs' failure to enjoin the foreclosure proceedings or to appeal the order of seizure, see LSA-C.C.P. 2642, et seq. See also, Plumbing Supply House, Inc. v. Century National Bank, 440 So.2d 173 (La.App. 4th Cir.1983), writ denied, 444 So.2d 1226 (La.1984).
[3] No. CA 83 1407; Rendered December 28, 1984.
[4] A fourth element may also be required, i.e., a pecuniary interest by the defendant in the transaction disseminating the misleading information. Dousson v. South Central Bell, 429 So.2d 466 (La.App. 4th Cir.1983), writ not considered, 437 So.2d 1135 (La.1983). However, it is not necessary to determine if such is a proper element of proof as we dispose of this matter on other grounds.
[5] Plaintiffs also urge the theory of promissory estoppel as an alternate basis for recovery. In order to prevail upon a claim of equitable estoppel, a plaintiff must prove: 1) a representation by conduct or word; 2) justifiable reliance upon this representation; and, 3) a detrimental change in position because of the reliance. Quality Finance Co. v. Mitchell, 423 So.2d 1262 (La.App. 1st Cir.1982). For the same reasons indicated in our discussion of negligent misrepresentation, we find no evidence of either a justifiable reliance or a detrimental change in position by plaintiffs. See Commercial Bank & Trust Co. v. Canale, 450 So.2d 761 (La.App. 5th Cir.1984), writs denied, 456 So.2d 166 (La.1984).