299 So.2d 529 (1974)
Mr. and Mrs. Vincent STELLY, Individually, and on behalf of Madonna Lee Stelly, minor child
v.
GERBER PRODUCTS COMPANY.
No. 6249.
Court of Appeal of Louisiana, Fourth Circuit.
June 6, 1974.
Rehearing Denied September 10, 1974.
Writ Refused November 15, 1974.
*530 C. Ellis Henican, Andrew I. Brown, Henican, James & Cleveland, New Orleans, for plaintiffs-appellants.
Jerry A. Brown, J. Wayne Anderson, Monroe & Lemann, New Orleans, for defendant-appellee.
Before REDMANN, GULOTTA and MARCEL, JJ.
REDMANN, Judge.
This appeal from dismissal on exception of prescription argues that a baby food manufacturer, because of its implicit warranty of wholesomeness of its products, has a quasi-contractual obligation towards the ultimate consumer, and that a claim for damages for breach of that warranty and obligation is prescribed not by La.C.C. art. 3536's one-year prescription for "offenses and quasi-offenses" (tort), but by art. 3544's ten-year prescription for all personal actions not sooner prescribed by special rule.
Quoting LeBlanc v. Louisiana Coca-Cola B. Co., 1952, 221 La. 919, 60 So.2d 873, 875, plaintiffs argue that the manufacturer's "warranty of wholesomeness result[s] from the sale and distribution of its foods or beverages for consumption by the public in the original package or sealed containers." Adding advertising of the product as an additional source of an "obligation of warranty", plaintiffs argue that the obligation of the manufacturer arises from quasi-contract as defined by C.C. art. 2293 (irrespective of whether or not the manufacturer may also be liable as for a quasi-offense under art. 2315).
LeBlanc's "warranty" is not an obligation but a representation, since it is a warranty one "is entitled to rely on", 60 So.2d at 875.[1]LeBlanc does not support plaintiffs quasi-contract theory.
C.C. art. 2293 defines quasi-contracts as "the lawful and purely voluntary act of a *531 man, from which there results any obligation whatever to a third person, and sometimes a reciprocal obligation between the parties."
The meaning of art. 2293 is clearer from its Code context. Art. 1760 states the origin of civil obligations as either the operation of law or the consent of the parties. The latter source is contract. As to the former, art. 2293 declares that, while some obligations are imposed by the law alone, others arise "from an act done by the party obliged, or in his favor . . . [and] result either from quasi contracts, or from offenses and quasi-offenses."
Litvinoff, Louisiana Civil Law Treatise, Obligations § 59, describing this traditional civilian classification, writes:
"Within the context of this classification, contracts are willful and lawful acts of agreement productive of obligations. Quasi-contracts are willful and lawful acts also, but without the concurrence of the wills required for the formation of an agreement. Delicts and quasi-delicts [offenses and quasi-offenses] are unlawful acts, which is the feature which distinguishes these sources [of obligations] from the two preceding ones."
Aubry & Rau, Droit Civil Francais, Obligations, § 305 (La.Law Inst. trans.), observe:
"Obligations of the second kind [founded on an act of man; cf. La.C.C. art. 2292] may be founded either on a lawful or an unlawful act.
"In the first case, they derive from contract . . . or a quasi contract. . .: In the second case, from an offense or a quasi offense. . . ."
Toullier, Droit Civil Francais, II, iv, Of Obligations Which are Formed without Agreement, § 113 (trans. Miller, ed. Polack), 16 La.Bar.J. 147 (1968), similarly characterizes the French Code's division as into those obligations occasioned by "licit acts and agreements . . . [and] those which arise from illicit acts. These [latter] are divided into two categories, offenses and quasi-offenses."
The Louisiana Civil Code is express in defining quasi-contract as resulting from "lawful" and voluntary act, art. 2293. Our Code does not expressly define offense and quasi-offense as "unlawful" acts from which obligations arise, but this word is used in art. 2324, in the chapter "Of offenses and quasi offenses", to characterize the tortious act:
"He who causes another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido, with that person, for the damage caused by such act."
Hartman v. Greene, 1934, 193 La. 234, 190 So. 390, 391, concludes that "unlawful" in art. 2324 means simply "wrongful" and not criminal.
We conclude that the word "lawful" in art. 2293 is a word of art in the civilian tradition of dividing acts into those which one has the right to do and those which the law, in its most general sense, denies one the right to do. See Toullier, supra, §§ 119-120.
In our case, the act of defendant from which an obligation is argued was the manufacture of food for human consumption or its advertising as fit for human consumption. These are indeed "lawful" acts if the food is wholesome, but no obligation arises toward the consumer from manufacturing etc. wholesome food.
Plaintiffs seek damages because, allegedly, defendant manufactured unwholesome food that made plaintiff infant seriously ill. It is not lawful, in the sense of art. 2293, to make and sell food which contains harmful substances. Such an act is unlawful, in the sense of art. 2324. The manufacture of unwholesome food is therefore not a lawful act from which a quasi-contractual obligation may arise.
*532 Thus neither the lawful act of manufacturing etc. wholesome food, nor the unlawful act of manufacturing unwholesome food, can result in any quasi-contractual obligation to the consumer.
Plaintiffs' theory is that the implied warranty of wholesomeness is itself an obligation. One may agree that a food processer has an obligation to make wholesome food (and to advertise its food accurately). But the obligation to make wholesome food does not arise from the lawful act of making wholesome food, nor from the lawful act of advertising, as wholesome, food which is wholesome. The obligation to make only wholesome food is an obligation of the general law which obliges everyone not to injure another, just as is the obligation to drive an automobile safely. No one is obliged to manufacture food or to drive; but if one elects to do either, he must so do it as not to cause injury to another. However, it is not the lawful act of driving safely that obliges one to drive safely; and it is not the lawful act of making safe food that obliges one to make safe food. The general duty not to injure another pre-exists and is independent of the act of driving or making food. This obligation is not one of quasi-contract.
Consumers might, as purchasers (or third-party beneficiaries of a purchase, C.C. art. 1890), bring an action in contract for breach of the seller's warranty against redhibitory defects, art. 2476. The seller who knows the defect is answerable in damages, art. 2545, and the manufacturer may be presumed to know the defect of his product. See, e. g., Tuminello v. Mawby, 1952, 220 La. 733, 57 So.2d 666. Non-privity is not a barrier to a suit by the ultimate consumer, Media Pro. Consult., Inc. v. Mercedes-Benz of N.A., Inc., 1972, 262 La. 80, 262 So.2d 377. However, the action of redhibition prescribes in one year, art. 2546, just as does the tort action for damages from a quasi-offense, art. 3536.
Prior to our plaintiffs' purchase and consumption of the allegedly unwholesome food, defendant had no obligation toward them other than the general duty not to harm. No quasi-contractual obligation arose from the lawful acts of making etc. wholesome food. The purchase brought certain contractual obligations including subrogation of contractual obligations. The consumption brought damage and an obligation upon defendant to repair that damage, which defendant's "unlawful" or wrongful act caused. But both the latter delictual action and the former contractual action have been prescribed by the passage of more than one year.
Affirmed.
NOTES
[1] We pretermit the question whether the source of liability is the misrepresentation of unwholesome food as wholesome, or the making of unwholesome food. LeBlanc solved an evidentiary rather than a substantive problem.