FIDELITY & DEPOSIT CO. OF MARY-LAND, Plaintiff-Appellant,

v.

Harold J. SMITH, Jr., Defendant-Third Party Plaintiff, Appellee-Appellant,

v.

KESSLER–BODENHEIMER, et al., Third Party Defendants-Appellees.

No. 82–3655.

United States Court of Appeals, Fifth Circuit.

April 30, 1984.

Rehearing Denied May 22, 1984.

Eugene R. Preaus, Virginia N. Roddy, New Orleans, La., Fidelity & Deposit Co. of Maryland.

John D. Lambert, Jr., New Orleans, La., for Smith.

James Ryan, III, Peter S. Title, New Orleans, for Kessler-Bodenheimer.

Before WISDOM, REAVLEY and JOHNSON, Circuit Judges.

WISDOM, Circuit Judge:

In this diversity action controlled by Louisiana law, Fidelity and Deposit Company of Maryland appeals from the grant of a summary judgment in favor of Harold Smith based on the one-year prescriptive period for offenses and quasi-offenses. Smith appeals from the denial, also for prescription, of his third-party action for defamation against his former employer, Kessler-Bodenheimer, Inc. This appeal raises two issues. The first is the prescriptive period to be applied to a cause of action brought by a fidelity insurer against an employee of the insured. The prescriptive period depends upon the classification under Louisiana law of the insurer's cause of action against the employee. Although the district court did not reach the merits of this case, we must address the merits to classify the insurer's cause of action. The second issue raised by this appeal concerns the prescriptive period applicable to a cause of action for defamation.

We vacate the summary judgment granted to Smith and remand for a determination whether Kessler-Bodenheimer could state a quasi-contractual or contractual cause of action against Smith. Because Smith's action for defamation was filed more than one year from the date that the alleged injurious words were spoken, we affirm the denial of his cause of action.

I.

Fidelity and Deposit Company of Maryland (F & D) insured Kessler-Bodenheimer, Inc. (K–B) under the terms of a Comprehensive Dishonesty, Disappearance and Destruction Policy. The policy protected K–B from loss sustained as a result of the "dishonest or fraudulent acts" of its employees. K–B filed a claim under the fidelity policy based on the allegedly dishonest actions of its employee, Harold Smith. K–B maintains that Smith caused it to suffer a monetary loss by engaging in a fraudulent financing scheme on behalf of one of its clients, Mitchell, Marsh & Marsh (MM & M). Smith maintains that his actions constituted an accepted business practice, or alternatively that MM & M's promissory note was a novation that extinguished any obligation he had to K–B.[1]

Under K–B's usual financing practice, a client purchasing insurance must pay in cash a minimum of 20 percent of the premium due on the policy. The balance, up to 80 percent, may be financed with one of two companies approved by K–B for this purpose. The finance company pays the balance to K–B and collects from the client on an installment basis. K–B guarantees the loans.

1. The novation issue was not reached by the district court, and we will not consider it as an initial matter.

Smith handled the MM & M account for his employer. MM & M was a real estate investment company that purchased insurance coverage from K–B as it acquired new properties. To purchase this insurance, MM & M used the 80 percent financing scheme through A & R Capital Corporation, one of the approved companies. Because of equipment failure, A & R did not send payment notices to MM & M for several months. When a statement eventually was sent, the account was $16,000 in arrears. MM & M informed Smith that it could not pay this amount in a lump sum and that it would need additional time to bring its existing account up-to-date. In the interim, MM & M continued to purchase insurance coverage for its new properties. To give MM & M an opportunity to settle its existing account without having to use its available cash to purchase new insurance, Smith fictitiously increased the insurance premiums to be financed on other accounts: thus, rather than paying 20 percent of the actual premium and financing the remaining 80 percent, the falsely inflated premium allowed MM & M to finance 100 percent of the actual premium. MM & M, however, remained unable to meet its payment obligation to A & R. When A & R informed K–B of the amount due on the account, the scheme was uncovered. At K–B's request, MM & M executed a promissory note, on which it later defaulted. K–B, of course, was liable to A & R for the balance due on MM & M's account.

On September 12, 1979, K–B filed a claim for $54,013.19 on its insurance policy with F & D for the losses it sustained as a result of Smith's actions. F & D began an investigation of the claim, and advised Smith of the investigation on October 9, 1979. F & D concluded that it was obligated to pay the amount claimed by K–B. After a meet-

ing with Smith and his attorney on December 21, 1979, F & D paid K–B. K–B assigned to F & D its right to all claims against Smith. F & D made demands upon Smith to indemnify it for the amount of the claim, but Smith refused to reimburse F & D. On December 16, 1980, F & D filed this suit against Smith. On May 26, 1981, Smith filed a third-party complaint alleging that K–B executed a false proof of loss and claim with F & D, and that such false filing constituted defamation of Smith.

The district court found that F & D was suing upon the rights of K–B and characterized F & D's cause of action as an offense or quasi-offense, which in Louisiana prescribes in one year. Because K–B became aware that Smith was engaging in allegedly dishonest acts as early as June 4, 1979, and filed a proof of loss on September 12, 1979, the suit filed by F & D on December 16, 1980, was barred by the one-year prescriptive period for tort (offense or quasi-offense) actions.[2] The district court also held that Smith's third-party complaint against K–B for defamation had prescribed. The district court found that Smith's defamation claim arose when K–B executed the allegedly false proof of loss with F & D. This filing occurred on September 12, 1979, and Smith was fully aware of the allegations contained in the proof of loss by October 17, 1979. Since Smith's third-party complaint was filed more than one year after these events, the district court held that the action was barred under article 3537 of the Louisiana Civil Code.[3]

## II.

F & D attempts to avoid the one-year prescriptive period applicable to causes of action based on offense or quasi-offense by asserting that it has independent causes of

**2.** "Delictual actions are subject to a liberative prescription of one year. This prescription begins to run from the day injury or damage is sustained." La.Civ.Code art. 3492 (West.Supp. 1984). Articles 3536 and 3537 formerly addressed the subject matter of this article.

**3.** Former article 3537 provided in relevant part that "prescription ... runs from [the day] on which the injurious words ... were sustained". La.Civ.Code art. 3537 (West 1979). The subject matter of article 3537 is now covered by the general provisions of article 3492. *See supra* note 2.

action against Smith based on suretyship and on an extra-codal doctrine, *actio de in rem verso*. Causes of action based on suretyship or on *actio de in rem verso* prescribe in ten years.[4]

■ F & D contends that it was not the fidelity insurer of K–B, but rather that it was the surety for K–B's employees. We reject this characterization of F & D's role in this litigation and hold that F & D does not have an independent cause of action against Smith based on suretyship.

Article 3035 of the Louisiana Civil Code defines suretyship as a contract in which a person binds himself for another who is already bound. Article 3039 requires that suretyship be evidenced by an express contract; strict construction of the contract is mandated. F & D has not pointed to any language in its contract with K–B that creates a suretyship between F & D and K–B's employees. It has no contract with the employees. Thus, based on the language of the civil code, F & D's suretyship argument must be rejected. *See American Empire Insurance Co. v. Fidelity & Deposit Co. of Maryland*, 5 Cir.1969, 408 F.2d 72, 77, holding that "[a] fidelity bond was an indemnity insurance contract [because] [t]he insurer's liability did not arise until the insured ... suffered a proven loss".

The commentators are in accord with our characterization of a fidelity insurer as an insurer, not as a surety.

"The important distinction between insurance and suretyship is that suretyship is a collateral undertaking while insurance is an original undertaking. The insurance contract requires only two parties, whereas suretyship requires three: the surety, the principal debtor, and the creditor. Usually in suretyship the person who is principally liable for the obligation is a named party.... *The protection against the acts of a group of unnamed employees has been called both 'fidelity insurance' and 'fidelity surety-*

*ship' but ... the contract is more properly denominated insurance."*

Slovenko, *Suretyship*, 39 Tul.L.Rev. 427, 434 (1967) (footnotes omitted) (emphasis added). *Accord* 9A J. Appleman, *Insurance Law and Practice* § 5661 (1981); 13 *Couch on Insurance* 2d §§ 46.2, 46.12 (rev. ed. 1982). Because F & D was not the surety for Smith but the insurer of K–B, it cannot rely on the ten-year prescriptive period for suretyship actions.

■ Nor can F & D rely on the ten-year prescriptive period applicable to actions *de in rem verso*. An action *de in rem verso* is an extra-codal action for unjust enrichment. The Louisiana Supreme Court approved the doctrine underlying the action in *Minyard v. Curtis Products, Inc.*, 1967, 251 La. 624, 205 So.2d 422. The doctrine has five prerequisites. First, the defendant must be enriched, either by a benefit received or by a detriment avoided. Tate, *The Louisiana Action for Unjustified Enrichment: A Study in Judicial Process*, 51 Tul.L.Rev. 446, 447 (1977). Second, the plaintiff must be impoverished. Third, the defendant's enrichment and the plaintiff's impoverishment must be causally connected. Fourth, and most importantly, neither the enrichment nor the impoverishment may be justified. *Id.* at 467. Justification can be supplied by a provision of law or contract that permits either the enrichment or the impoverishment. *Id.* Finally, the action will be permitted only when there is no other remedy at law. The effect of a prescribed action has not been resolved by the Louisiana Supreme Court. A Louisiana appellate court has held that a prescribed action precludes a cause of action *de in rem verso*. *Aetna Life & Casualty Co. v. Dotson*, La.App., 346 So.2d 762, 765, *writ denied*, La.1977, 349 So.2d 1272. It reasoned that the extra-codal action should not "be allowed to defeat the purpose of a rule of law directed to the matter at issue". *Id.*

---

**4.** "Unless otherwise provided by legislation, a personal action is subject to a liberative pre-scription of ten years." La.Civ.Code art. 3499 (West Supp.1984) (formerly art. 3544).

The commentators are divided on this issue.[5]

We do not reach the fifth requirement, because we find that the fourth requirement is not met: F & D's impoverishment, its payment to K–B, was justified by its contract to provide fidelity insurance to K–B. The action *de in rem verso* is an extraordinary remedy. *See* Litvinoff, *The Work of the Louisiana Appellate Courts for the 1967–1968 Term—Obligations*, 29 La.L.Rev. 200, 204 (1969). Its scope and availability would be broadened unnecessarily if it were to apply to actions by insurers to recover monies paid to insureds under valid insurance contracts.

We find that F & D does not have an independent cause of action against Smith. Rather, we agree with the district court's finding that F & D was suing upon K–B's rights against Smith.

### III.

F & D next contends that, if its right to sue is based solely on the assignment of K–B's rights against Smith, it is entitled to the ten-year prescriptive period provided in article 3499 because Smith breached both a quasi-contractual and a contractual obligation to K–B. To prevail on this contention, F & D must establish that K–B has a contractual or quasi-contractual cause of action against Smith to which F & D can be subrogated and that F & D has elected to pursue that cause of action. *See Kramer v. Freeman*, 1941, 198 La. 244, 3 So.2d 609, 612, stating that "[i]t is well settled jurisprudence of [Louisiana] that the character which a plaintiff gives his pleadings and the form of his action govern the prescription applicable". Because the resolution of this contention requires an examination of disputed material facts, we find that the district court erred in granting summary judgment. *See* Fed.

R.Civ.P. 56(e). Accordingly, we vacate the judgment and remand the case for factual determinations.

Article 2293 of the Louisiana Civil Code defines a quasi-contract as the *"lawful* and purely voluntary act of a man, from which there results *any* obligation whatever to a third person". (emphasis added). F & D contends that Smith has a quasi-contractual "obligation to make restitution to his employer of any funds which he caused it [to] lose in acting intentionally to create an improper advantage for his client". Appellant's Brief at 18. Whether this obligation is quasi-contractual, however, depends in the first instance on whether the action giving rise to it was "lawful" within the meaning of article 2293. The Louisiana Supreme Court has stated that "the marked distinction between a *quasi* contract and an offense or *quasi* offense is that the act which gives rise to a *quasi* contract is a lawful act, and therefore is permitted; while the act which gives rise to an offense or *quasi* offense is unlawful, and therefore is forbidden". *Knoop v. Blaffer*, 1887, 39 La.Ann. 23, 6 So. 9, 11. *See also Aetna Life & Casualty Co. v. Dotson*, La.App., 346 So.2d 762, *writ denied*, La.1977, 349 So.2d 1272; *Northern Assurance Company of America v. Waguespack*, La.App. 1974, 304 So.2d 865; *Stelly v. Gerber Products Co.*, La.App.1974, 299 So.2d 529.

The Louisiana intermediate appellate courts have not adhered strictly to the lawfulness-unlawfulness dichotomy that separates quasi-contract from quasi-offense. *See, e.g., State ex rel. Guste v. Estate of Himbert*, La.App.1976, 327 So.2d 698, holding that the state had a quasi-contractual cause of action against an employee who defrauded the state for personal gain, and *Devoe & Raynolds Co. v. Robinson*, La. App.1959, 109 So.2d 226, holding that an

---

**5.** *Compare* Comment, *Actio De In Rem Verso in Louisiana: Minyard v. Curtis Products, Inc.*, 43 Tul.L.Rev. 263, 294 (1964), *and* Litvinoff, *The Work of the Louisiana Appellate Courts for the 1967–1968 Term—Obligations*, 29 La.L.Rev. 200, 205 (1969), stating that when there is another remedy, the action *de in rem verso* should not be allowed for the sole reason that the other

remedy is prescribed, *with* Nicholas, *Unjustified Enrichment in the Civil Law and Louisiana Law*, 36 Tul.L.Rev. 605, 640 (1962), stating that, if an election between a delictual cause of action and an action *de in rem verso* is allowed when the former is not barred, it also should be allowed when it is barred.

employee had a quasi-contractual obligation to return funds embezzled from his employer. The commentators, however, uniformly follow the literal language of the civil code which requires a lawful action as the prerequisite for a quasi-contract. Professor Litvinoff states in the *Louisiana Civil Law Treatise (Obligations)* § 59 (1969) that

"Quasi-contracts are *willful* and *lawful* acts ..., but without the concurrence of the wills required for the formation of an agreement. Delicts and quasi-delicts are *unlawful* acts, which is the feature that distinguishes these sources from the two preceding ones."

(Emphasis in the original) (citing 2 Planiol, *Civil Law Treatise*, Part I (An English translation by the Louisiana State Law Institute) § 806 (1959)). *See also* 1 Aubry & Rau, *Civil Law Translations (Obligations)* § 305 (1965), stating that the "[i]mmediate foundation of obligations is either the law or an act of man. Obligations of the second kind may be founded either on a lawful or an unlawful act. In the first case, they derive from contract or a quasi contract: in the second case, from an offense or a quasi offense."

Although the Louisiana intermediate appellate courts disagree on the issue, we find that the better view—based on the clear language of the civil code, the civil law commentators, and the early Louisiana Supreme Court authority—is that quasi-contracts can arise only from lawful acts. To rely on the ten-year prescriptive period, therefore, F & D must show at a minimum that Smith's actions were lawful.[6]

■ "Lawful" is a term of art in the civil law tradition. It divides acts "into those which one has the right to do and those which the law, in its most general sense, denies one the rights to do". *Stelly v. Gerber Products Co.*, La.App.1974, 299 So.2d 529, 531. An act may be "unlawful" and therefore not a proper basis for a

quasi-contractual obligation without being illegal or criminal. An act is unlawful within the meaning of article 2293 if it is merely "wrongful". *Id.*

The district court relied upon *Aetna Life & Casualty Insurance Co. v. Dotson*, La. App., 346 So.2d 762, *writ denied*, La.1977, 349 So.2d 1272, in holding that F & D's sole cause of action against Smith was delictual. In *Dotson*, the insurer paid a claim to the employer under a policy insuring against monetary losses incurred because of an employee's fraudulent acts. The employee had embezzled funds from the employer and had converted these funds to his personal use. The court held that the insurer's cause of action for restitution against the employee was subject to the one-year prescription period for offenses and quasi-offenses, not the ten-year period for quasi-contract. The court found that a quasi-contract was not established, because the actions of the employee were unlawful, and accordingly, were not within the language of article 2293. *Id.* at 764.

Although relevant to the issue presented here, *Dotson* is not dispositive of it. Smith's actions were not criminal. It is not clear from the record that they were wrongful. Smith contends that his actions were known to his employer and were an accepted business practice. This dispute cannot be resolved on the basis of the current record. It must be considered at a trial on the merits.

In addition to being predicated upon lawful actions, quasi-contracts generally arise from unjust enrichment. Planiol states that "when the common trait which characterizes all the acts called quasi-contract is sought, the quasi-contractual obligation appears to arise from the unjust enrichment of one at the expenses of another, the value of which must be restituted". 2 Planiol, *Traite elementaire de droit civil* § 812 (1959).

---

**6.** The issue whether actions "lawful" within the meaning of article 2293 could be "dishonest or fraudulent" under the terms of the insurance policy is not before us, and we express no opinion on it. The question is more properly raised before the district court at a trial on the merits if, on remand, the district court finds that the action is not prescribed.

Smith maintains that he received no monetary gain from his actions, and thus was not unjustly enriched by his actions.[7] F & D asserts that Smith used his knowledge to benefit his client (thereby maintaining the good will of his client) to the detriment of his employer, and that this benefit constitutes unjust enrichment. F & D also contends that Smith received commissions on MM & M premiums that were financed under the allegedly fraudulent scheme. On remand, the district court must determine whether Smith was unjustly enriched by his actions.[8]

F & D also maintains that K–B had a contractual cause of action against Smith for the breach of an implied fiduciary obligation arising from an employment contract. F & D relies on *Henley v. Haynes,* La.App.1979, 376 So.2d 1030, to assert that the breach of a fiduciary duty sounds in contract, not tort. In *Henley,* one partner sued his copartner for breach of a fiduciary duty to the partnership. The court found that the "relationship of partnership is fiduciary in character, and imposes on the members of the firm the obligation of the utmost good faith ..., of acting for the common benefit of all the partners ..., and of refraining from taking any advantage of one another". *Id.* at 1031 (citation omitted). The cause of action was based on a *contract* of partnership. Unlike *Dotson,* then, *Henley* did not involve a quasi-contract. *Id.* Even if the action complained of in *Henley* was unlawful and could not form the basis of a quasi-contract, the plaintiff could rely on a "real contract". Comment, *Prescription, Classification and Concurrence of Obligations,* 36 Tul.L. Rev. 556, 562 (1962).

The district court in this case did not address whether there was a breach of an employment contract between Smith and K–B. It is not enough to find that the initial relationship between the employer and the employee is in the nature of contract, if the cause of action is based on a tort and not on a breach of the contract. *See Northern Assurance Co. of America v. Waguespack,* La.App.1974, 304 So.2d 865, holding that an insurer's cause of action against an employee of its insured for wrongful conversion sounds in tort. To rely on *Henley,* therefore, the district court must find (1) that there was an employment contract between Smith and K–B, (2) that this contract imposed obligations of good faith similar to those imposed by the partnership contract in *Henley,* and (3) that Smith's actions were a breach of the contract.

■ If the district court finds that K–B had a contractual or quasi-contractual cause of action against Smith that it assigned to F & D, the court must then determine whether this cause of action was properly pleaded. *Importsales, Inc. v. Lindeman,* 1957, 231 La. 663, 92 So.2d 574; *Kramer v. Freeman,* 1941, 198 La. 244, 3 So.2d 609, 612. Under Louisiana law when one set of facts establishes more than one cause of action, the court must look to the pleadings to determine which cause of action is being asserted.

In its civil cover sheet, F & D identifies its cause of action as one sounding in contract. In a letter written to Smith, it asserts a right to collect based on article 2315, the article that in Louisiana is the fountainhead of tort causes of action. The

---

7. Addressing the issue of unjust enrichment in the context of an action *de in rem verso,* a student commentator stated that "the necessary enrichment may be either tangible or intangible.... [A] purely intangible, moral or intellectual advantage, ... if susceptible of monetary evaluation, is also enrichment...." Comment, *Actio De In Rem Verso in Louisiana: Minyard v. Curtis Products, Inc.,* 43 Tul.L.Rev. 263, 280 (1969) (footnotes omitted).

8. The quasi-contractual obligation, if one exists, runs between Smith and K–B. Smith may be unjustly enriched vis-a-vis his employer, even though F & D's "impoverishment" is justified by its insurance contract with K–B. Smith might have received unearned insurance premiums. The benefit conferred on his client, receiving insurance coverage without payment, might also be classified as a form of intangible enrichment. We need not resolve these issues, however, as they are more properly raised before the district court.

pleading clearly shows that F & D is suing on K–B's rights against Smith:

"After a thorough investigation of these claims, F. and D. was obligated to and did reimburse Kessler-Bodenheimer, Inc. the sum of $54,013.19, in consideration of which Kessler-Bodenheimer, Inc. *assigned to F. and D. its right, title and interest in and to any and all claims, demands, rights or cause of action against any individual and/or entity named in the aforementioned Proof of Loss.*

Pursuant ·to the above described payment, defendant, Harold J. Smith, Jr. became indebted to plaintiff for money paid out and expended for and on behalf of defendant." (emphasis added).

The pleading, however, does not identify the nature of K–B's rights against Smith. Thus, the pleading is inconclusive as to whether a tort action, a quasi-contract action, or a contract action is pleaded.[9] On remand, the district court should look beyond the pleading to the facts alleged and any other evidence that may be introduced to determine which cause of action F & D was asserting.

### IV.

F & D asserts that, if its cause of action is delictual and therefore is subject to the one-year prescriptive period of article 3492, the prescriptive period runs from the date it paid K–B's claim, not from the date of Smith's actions. The district court held that the one-year prescriptive period ran from the date that K–B discovered the alleged fraud, because on that date damage was "sustained" within the meaning of former article 3537.

■■■ Former article 3537 states that prescription for causes of action based on offenses or quasi-offense under article 3536 begins to run when damages are *sustained.* La.Civ.Code art. 3537 (West 1979)

(now codified at ·La.Civ.Code art. 3492 (West Supp.1984)). F & D is suing upon the rights of K–B. The relevant date in an action based on a right of subrogation is the date of injury to the principal. *Foster & Glassell Co. v. Knight Brothers,* 1922, 152 La. 596, 93 So. 913, 914. On June 4, 1979, when A & R informed K–B of the arrearages in the MM & M account, K–B became aware of the alleged dishonest action. Prescription runs from that date. When an insurer sues on the rights of the insured, it cannot have a greater right than does the insured. Thus, any action, whether delictual or contractual, that F & D has against Smith runs from the date that K–B sustained damages.

### V.

■■■ Smith appeals from the denial of his third-party action for defamation on the ground of prescription. Smith contends that he was injured both when the allegedly false proof of loss was filed and when F & D brought suit against him. Although Smith's third-party complaint against K–B was filed more than one year after the proof of loss was submitted to F & D, it was filed within one year of the instigation of the suit against Smith by F & D. K–B asserts that the filing of the suit by F & D is irrelevant to the running of the one-year prescriptive period for defamation. K–B argues that prescription runs either from the original publication of the allegedly defamatory words or from the discovery of the publication by Smith. Both events occurred more than one year before Smith filed suit. The district court held that prescription ran from K–B's execution of the proof of loss. The court found that the suit may have enhanced the damages sustained as a result of the original publication, but that the filing of the suit was not

---

**9.** In examining pleadings to determine which cause of action is pleaded, courts have focused on the nature of the relief requested. "[A] plaintiff either may sue for damages for the wrongful act by which he has been deprived of the thing [wrongfully acquired], or he may sue

for the restoration of the thing. One is an action in tort, ...; the other is an action in quasi-contract." *Dantagnan v. I.L.A. Local 1418, AFL–CIO,* 5 Cir.1974, 496 F.2d 400, 402 (citation omitted).

a proper frame of reference for prescription. We agree with the district court.

Suits for "injurious words", or defamation, are governed by the one-year prescriptive period of article 3492. La.Civ.Code art. 3492 (West Supp.1984) (formerly article 3537). Former article 3537 provides that prescription for suits based on injurious words runs from the day "on which the injurious words ... were sustained".[10] This language has been interpreted as requiring that prescription run from the day on which the injurious words were spoken or published. *See Bernstein v. Commercial National Bank*, La.1926, 161 La. 38, 108 So. 117; *Kennard v. Yazoo & M.V.R. Co.*, La.App.1939, 190 So. 188. An exception to this rule has been applied when the plaintiff is not aware of the alleged defamation until some time after publication. *Youngblood v. Dettenheim*, La.App.1977, 352 So.2d 265, *cert. denied*, 1978, 354 So.2d 211. In this case, Smith was aware of the proof of loss more than one year before he filed a third-party complaint. Accordingly, we find that his cause of action has prescribed.

### VI.

We find that F & D was not the surety for Smith and, therefore, does not have an action for indemnification based on suretyship. Nor does it have cause of action based on *actio de in rem verso*, because its impoverishment was justified by the contract of insurance with K–B. We conclude that F & D is suing upon the rights of K–B. We remand for a determination whether K–B has a contractual cause of action for the breach of an employment contract or a quasi-contractual cause of action for the loss it sustained as a result of Smith's actions.

The summary judgment entered for Smith is VACATED and the case REMANDED. The dismissal of Smith's defamation actions is AFFIRMED.

**10.** Although the subject matter of former article 3537 is now covered by the general provision of article 3492, the change does not effect a change in substance. "Louisiana jurisprudence inter-

preting the source provisions continues to be relevant." La.Civ.Code art. 3492, comment (a) (West Supp.1984).