**MARINE DESIGN, INC.,**
**Plaintiff-Appellee,**

v.

**ZIGLER SHIPYARDS, A DIVISION OF LEEVAC CORPORATION,**
**Defendant-Appellant.**

**No. 85–4134.**

United States Court of Appeals,
Fifth Circuit.

June 9, 1986.

---

Henry S. Provosty, James G. Burke, Jr., Daniel E. Knowles, New Orleans, La., for defendant-appellant.

Charles B. Johnson, New Orleans, La., for plaintiff-appellee.

Before POLITZ, HIGGINBOTHAM, and JONES, Circuit Judges.

POLITZ, Circuit Judge:

Zigler Shipyards, a division of Leevac Corporation, appeals a judgment rendered after a bench trial in this Louisiana diversity suit, awarding Marine Design, Inc. quasi-contract and *quantum meruit* damages of $60,000. We affirm.

## BACKGROUND

In December 1978 Zigler entered into an agreement with Poling Brothers Transportation Corporation for the construction of an 80,000-barrel tank-barge at Zigler's shipyard in Jennings, Louisiana. Marine Design, a naval architectural firm, had prepared five conceptual drawings and a set of design specifications which it agreed to release to whichever shipyard Poling selected to construct the barge. Poling picked Zigler.

In accordance with its agreement with Poling, Marine Design released the drawings and specifications to Zigler. The five drawings bore a red-ink admonition declaring: "This print is the property of Marine Design, Incorporated. It may not, in whole or in part, be copied, reproduced, or used in any way detrimental to their interests, without written permission." The specifications contained the statement: "All drawings remain the property of the Architect [Marine Design] and are released for the building of one vessel. To be returned to Architect on completion of the vessel." The drawings were never returned. Zigler used the drawings and specifications to prepare detailed working drawings used in the construction of Poling's barge.

In July 1979 Marine Design provided its drawings and specifications to Northeast Petroleum Corporation which wanted a barge like Poling's. The construction contract was awarded to Zigler. The drawings contained the same notation as the plans prepared for Poling and the specifications contained the identical ownership provision. The Northeast barge was completed in November 1980.

While the Northeast barge was still under construction, Zigler received a request from Interstate Oil Transportation Company for a bid price on construction of a barge like the Poling and Northeast barges. As a result of this inquiry, David Hintzie, subsequently Zigler's engineering manager, called Marine Design on September 12, 1980, to discuss the release of the plans for construction of another barge. Joe Hack, president of Marine Design, informed Hintzie that Marine Design would release the plans and specifications for the building of one vessel for a fee of $60,000. On September 15, 1980, Alfred Hack, treasurer of Marine Design, confirmed the telephone conversation in a letter to Hintzie. He there stated:

> Confirming verbal discussion with you and my brother, Joe, on Friday, September 12th, we will be pleased to release the plans for the building of one vessel for your client for $60,000.00 predicated on use of the plans, excluding any major engineering or design work on our behalf [sic]. This means you can count on our cooperation as long as the hours are not excessive. With appreciation for your keeping us informed on this joint venture.

Zigler did not get the Interstate contract. The evidence reflects no response to this letter.

In December 1980 Zigler began construction of a third 80,000-barrel tank-barge with no particular purchaser committed. In March 1981 Shearson Leasing Corporation contracted for the barge and named it M/V McALLISTER 80.

Marine Design learned of the construction of McALLISTER 80 through the industry grapevine and an ad in the Wall Street Journal. The similarity in design to the Poling and Northeast barges was apparent. On March 13, 1981, Alfred Hack wrote the president of Zigler, referred to his September 15, 1980 letter to Hintzie, and advised that Marine Design would accept the $60,000 fee in ten installments. An invoice for $6,000 was enclosed. Zigler refused to pay. In October 1983 the instant suit was filed.

Zigler sought dismissal prior to trial on the grounds that Marine Design's claim arose *ex delicto* and was barred by the one-year period of prescription provided by Louisiana Civil Code article 3536. The district court denied the motion, finding that the action sounded in quasi-contract and was subject to the 10-year prescriptive period established by article 3544.

At trial Zigler contended that it had not derived the design for McALLISTER 80 from the Marine Design plans. Although the stern of the McALLISTER 80 was different, approximately two-thirds was essentially identical to the Poling and Northeast barges. The trial court awarded Marine Design damages of $60,000.

## ANALYSIS

Zigler does not challenge the district court's factual determinations, but argues that the trial court erred in its finding that Marine Design's claim sounded in quasi-contract and was thus timely. Alternatively, Zigler argues that Marine Design failed to satisfy its burden of proving that it was entitled to recover $60,000. We reject both contentions.

*Quasi-Contract or Tort?*

The basic issue on appeal triggers the oft-repeated juristic exercise of categorizing claims. If Marine Design's claim arises *ex delicto,* from a wrongful act by Zigler, then the one-year prescriptive period of La.Civ.Code art. 3536 would bar this suit. *Madden v. Madden,* 353 So.2d 1079 (La. App.1977). On the other hand, if the claim arises from a quasi-contract, then the ten-year prescriptive period of La.Civ.Code art. 3544 would apply and the action would be timely. *Munson v. Martin,* 249 La. 925, 192 So.2d 126 (1966).

Article 2293 of the Civil Code of Louisiana defines a quasi-contract as "the *lawful* and purely voluntary act of a man, from which there results any obligation whatever to a third person, and sometimes a reciprocal obligation between the parties." (Emphasis added.) Whether a quasi-contractual obligation has arisen "depends in the first instance on whether the action giving rise to it was 'lawful' within the meaning of article 2293," *Fidelity & Deposit Co. of Maryland v. Smith,* 730 F.2d 1026, 1031 (5th Cir.1984), since "the marked distinction between a *quasi* contract and an offense or *quasi* offense is that the act which gives rise to a *quasi* contract is a lawful act, and therefore is permitted; while the act which gives rise to an offense or *quasi* offense is unlawful, and therefore is forbidden." *Knoop v. Blaffer,* 39 La.Ann. 23, 6 So. 9, 11 (1887) (*citing City of New Orleans v. Southern Bank,* 31 La.Ann. 560, 566 (La.1879)). Although the "Louisiana intermediate appellate courts have not adhered strictly to the lawfulness-unlawfulness dichotomy that separates quasi-contract from quasi-offense," *Fidelity & Deposit Co. of Maryland v. Smith,* 730 F.2d at 1031 (collecting cases), we find compelling and fully agree with Judge Wisdom's conclusion therein "that the better view—based on the clear language of the civil code, the civil law commentators, and the early Louisiana Supreme Court authority—is that quasi-contracts can arise only from lawful acts." *Id.* at 1032.

As used in article 2293, "lawful" is a term of art dividing acts "into those which one has the right to do and those which the law, in its most general sense, denies one the right to do." *Stelly v. Gerber Products Co.*, 299 So.2d 529, 531 (La.App.), *writ denied*, 302 So.2d 616 (La.1974). "An act is unlawful within the meaning of article 2293 if it is merely 'wrongful.'" *Fidelity & Deposit Co. of Maryland v. Smith*, 730 F.2d at 1032.

■ In addition to requiring a "lawful" act to create a quasi-contract, Louisiana law also requires: (1) a benefit conferred on the defendant by the plaintiff; (2) an appreciation by the defendant of the benefit; and (3) the acceptance and retention by the defendant of the benefit under circumstances such that it would be inequitable for him to retain the benefit without payment for its value. *Busby v. Parish Nat'l Bank*, 464 So.2d 374 (La.App.), *writ denied*, 467 So.2d 1132 (La.1985); *Commercial Employment Service, Inc. v. Morphy, Makofsky & Masson, Inc.*, 436 So.2d 719 (La.App.1983); *Hobbs v. Central Equip. Rentals, Inc.*, 382 So.2d 238 (La.App.), *writ denied*, 385 So.2d 785 (La.1980).

Zigler does not contend that these three elements were not satisfied here, but argues only that its use of Marine Design's plan was unlawful and wrongful and therefore could not create a quasi-contract.

■ Zigler maintains that Marine Design's stamp on the drawings and the ownership language in the specifications establish that its use of the plans was wrongful. Zigler also relies on the district court's finding that Zigler knew it could not use the drawings and specifications without Marine Design's permission as further evidence that its use thereof was wrongful.

We reject Zigler's contention that its use of the drawings was not lawful within the meaning of article 2293, for we conclude that Marine Design had given Zigler permission to use its drawings and specifications to build one barge for a stated fee.

In the Hintzie/Hack telephone conversation on September 12, 1980, Marine Design made known its willingness to release its plans for the building of a vessel. In the letter three days later Marine Design's treasurer confirmed that Marine Design would permit use of the plans for construction of one vessel for $60,000. We are mindful that the letter grants permission to build a vessel "for your client," but that qualifier is subsidiary to the main thrust of the telephone conversation and letter, to wit, Marine Design's authorization of the use of its plans for a $60,000 fee. When Zigler began building the barge which it subsequently sold to Shearson, it knew that it had Marine Design's permission to use the plans and specifications to build one barge. Zigler's conduct was a lawful exercise as envisioned by article 2293. The district court correctly applied the 10-year prescriptive period for quasi-contractual disputes. Marine Design's complaint against Zigler was timely filed.

*Amount of Damages.*

Zigler challenges the $60,000 award, contending that Marine Design failed to present evidence supporting damages in that amount. Marine Design's expert testified that the reasonable value of conceptual designs by a naval architect was 1.4% of the construction cost of the barge, or $76,580.00. Zigler's expert testified that designers usually work by the hour, and that the amount of time and labor expended in the preparation of conceptual drawings is usually valued between $5,000 and $6,000. There was other testimony suggesting that Zigler saved money on various seaworthiness and structural tests and on designs and drawings by using Marine Design's work product.

■ The measure of damages under article 2293 is often determined by reference to the principles of *quantum meruit.* The various methods by which the Louisiana courts have determined the amount of *quantum meruit* awards were summarized in *Fullerton v. Scarecrow Club, Inc.*, 440 So.2d 945 (La.App.1983). Louisiana's courts generally recognize "that a plaintiff who establishes his right to be compensated on *quantum meruit* should recover as

much as he reasonably deserves for his services and for the time and labor required for them. There is no specific test which must be applied to determine the reasonable value of such services. It is a matter of equity depending upon the circumstances of each case." *Jones v. City of Lake Charles*, 295 So.2d 914, 917 (La.App. 1974). *See also Fullerton; Southern Mosaic Tile, Inc. v. Alessi*, 411 So.2d 601 (La.App.1982); *Roy Berard & Sons, Inc. v. Latham*, 334 So.2d 804 (La.App.1976) (Watson, J.). The plaintiff, however, may recover neither more than the actual value of its services and materials nor more than the amount by which the defendant was enriched. *Cabot, Cabot & Forbes Co. v. Brian, Simon, Peragine, Smith & Redfearn*, 568 F.Supp. 371 (E.D.La.1983). Finally, we note in passing that as amended effective January 1, 1985, La.Civ.Code art. 2324.1 provides: "In the assessment of damages in cases of ... quasi contracts, much discretion must be left to the judge or jury." The trial of this case was conducted on January 23, 1985.

■ The record contains expert testimony that the typical market value for Marine Design's services in connection with the planning of a barge costing over $5,470,000 would have been $76,580. In its letter to Zigler, Marine Design agreed to release its plans and specifications for $60,000, indicating, at an unsuspicious time, what Marine Design thought its plans were worth. Zigler was aware of this figure and did not question it when Marine Design made demand and submitted a bill in March of 1981. The $60,000 award is not an abuse of the broad discretion vested in the district court.

Accordingly, the judgment of the district court is, in all respects, AFFIRMED.