519 So.2d 783 (1987)
Emmett SMITH and Wilburn Smith,
v.
Carew HUDSON, Jr., et al.
No. 86 CA 1477.
Court of Appeal of Louisiana, First Circuit.
December 22, 1987.
Rehearing Denied February 24, 1988.
*784 Alexis A. St. Amant, Baton Rouge, for plaintiffs-appellants Emmett Smith, et al.
W. Lee Overton, Overton & Overton, Clinton, for defendant-appellee Carew Hudson, Jr.
Before WATKINS, CARTER and FOIL, JJ.
WATKINS, Judge.
Emmett Smith and Wilburn Smith sued Carew (sic) Hudson, Jr., Donna Martin Hudson, his wife, Julius B. Martin and Cordelia Stone Martin, parents of Donna Martin Hudson, over a dispute arising from an alleged contract to supply gravel allegedly entered into in September of 1984. Cordelia Stone Martin was dismissed from the suit pursuant to defense counsel's motion to dismiss all four defendants on November 14, 1985. The trial court rendered judgment on June 9, 1986, awarding plaintiff Emmett Smith 25¢ per cubic yard on 14,164 cubic yards of clay/gravel or $3,561.00. Plaintiffs were cast for all costs and the other demand of plaintiffs (to be reimbursed $18,002.53 for rental of equipment) was dismissed. Plaintiffs appeal. We affirm in part and reverse in part.
Carue Hudson, Jr., asked Emmett Smith to use his contacts to sell some clay/gravel to Barber Brothers Contractors (Barber Bros.) on a highway project. The clay/gravel was owned by Mrs. Hudson's father, Julius B. Martin, on land owned by her. Smith was to receive a commission, the amount of which is in dispute (plaintiffs allege it was 50¢ per cubic yard, while defendants contend it was 25¢ per cubic yard), on each cubic yard sold, the total price being $3.50 per cubic yard.
Subsequent to this agreement, Emmett Smith began negotiations with Barber Bros. to supply sand/clay gravel for a highway project. Carue Hudson told Emmett Smith that he required $3.50 per yard not including delivery to the construction site, and due to pending bankruptcy proceedings, requested that all invoicing of the Barber contract be through a name other than that of Carue or Donna Hudson. Emmett Smith suggested using his brother's company, S & S Trucking, to which Carue Hudson agreed.
After further negotiations, Barber Bros. agreed to pay $3.50 per yard and discussed what its requirements were. Thereafter, Emmett Smith informed Carue Hudson of Barber's requirements for the gravel, which included mixing the gravel to certain *785 specifications, a state inspection of the gravel after it had been mixed and providing Barber the opportunity to cut in lime prior to stockpiling the gravel. At trial Carue Hudson admitted being told about the specifications, however, he maintained that he never agreed to mix the gravel because it would not be cost effective. Notwithstanding his disapproval, Carue Hudson allowed Emmett Smith to rent equipment to execute the mixing requirements, and Carue Hudson operated the equipment for such purposes. Carue Hudson did not refuse the conditions made by Barber and never suggested that Emmett Smith renegotiate the contract to exclude the mixing requirement. Instead, Carue Hudson allowed Emmett Smith to rent equipment for digging and mixing the gravel, never telling Emmett Smith that he would not be responsible for the payment of the rental equipment. Emmett Smith contends that Carue Hudson agreed that the Smiths would rent the necessary equipment to remove and process the gravel and be reimbursed from the contract proceeds.
The equipment was delivered to the gravel pit owned by Mrs. Hudson and her father, and remained there intermittently from October 31, 1984 through February 19th of 1985.
Carue Hudson claims that he never agreed to the equipment rental. However, at trial he admitted that he "guessed that the plaintiff thought he would pay for it, he didn't know." Furthermore, Carue Hudson stated that he never told Emmett Smith not to rent the equipment and that he never told him that he wouldn't pay for it. In fact, Carue Hudson agreed that if the equipment rental had been around $9,000 instead of $18,000 he would have paid for it and that when the rental cost became too high he decided not to pay because he couldn't make money. Moreover, Carue Hudson admits that he operated the equipment for approximately 64 hours, performing various operations, including digging a ditch, removing stumps, loading 400 yards of gravel at $3.00 per yard for a contract with Idlewood, loading 300 yards of gravel at $3.00 per yard for a contract with Dr. Mills, digging a pond as a favor for a mutual friend of his and Emmett Smith, loading gravel for another contract with Emmett Smith, and building a pad on which to mix the gravel for Barber Bros. Mr. Hudson's son also operated one of the dozers for 2 days spreading the stockpiled gravel in order for it to dry out.
Mr. Hudson maintained throughout the trial that he did not need Emmett Smith to rent equipment because his brother-in-law, Eugene G. Rowe, could supply the necessary equipment. Mr. Hudson stated that he would have paid Mr. Rowe $1.00 per cubic yard for the equipment and operators. When questioned at trial, Mr. Rowe stated that he and Mr. Hudson discussed using his equipment but that Mr. Hudson never requested the equipment when the project began.
Apparently, at some point, Carue Hudson agreed to perform the mixing requirements. The record shows that he and his son operated the rental equipment, clearing a path for a mixing pad, building a pad, digging a ditch to keep rain water off the stockpiled gravel and spreading the gravel. The record also reveals that Mr. Hudson considered the first two dozers, which Emmett Smith rented, too small for the job and told Emmett Smith that it would take a much larger dozer to mix the gravel. Thereafter, Emmett Smith rented a D-8 dozer and operator for 4 days, and Carue Hudson assumed the responsibility and in fact paid the charges in connection with the rental of the D-8 and operator.
It appears from the record that during the project extended rainfall caused many delays and required prolonged equipment rental, as well as drying out the gravel which had already been mixed and stockpiled. After experiencing these unplanned setbacks, Carue and Donna Hudson decided that attempting to mix the gravel was no longer cost effective and broke off all relations with Emmett Smith, refusing to speak with him.
After breaking off their relationship with Emmett Smith, Mrs. Hudson contracted directly with Mr. Barber, negotiating a price of $2.25 per cubic yard with Barber supplying *786 all the equipment and labor. Mr. Barber testified that he thought this price was a little high, but believed it was worth the price because they were running behind on the job and Mrs. Hudson's pit was located very close to the construction site, as well as the fact that they had some gravel already mixed and approved by state inspection. Mr. Barber also stated that Mrs. Hudson's gravel was good rich material, not requiring additional gravel to sweeten it. Barber Bros. ultimately purchased 14,164 cubic yards at $2.25, totaling $31,869.01. Mr. Barber also stated that he turned down an offer to purchase gravel at $1.00 per cubic yard from another gravel pit because it required sweetening.
The following list describes the equipment rented, the duration of the rental and the cost:

Case 1150C Dozer 10/31/84 through 11/30/84 $4,303.00
Drott 50 Excavator 11/26/84 through 12/26/84 6,450.00
Case 1150C Dozer 12/01/84 through 12/21/84 3,061.85
Drott 50 Excavator 12/26/84 300.42
1150C Dozer 01/16/85 through 02/01/85 1,285.42
Case 1150C Dozer 02/18/85 through 02/19/85 1,288.27
Case 880C Excavator 02/18/85 through 02/19/85 1,313.57

The trial court found in Reasons for Judgment that plaintiffs had failed to prove by a preponderance of the evidence that an agreement existed between the parties concerning rental of equipment and payment therefor. The trial court further found that plaintiff Emmett Smith was entitled to 25¢ per cubic yard of gravel, rather than 50¢ as plaintiffs had sought. Plaintiffs were assessed with costs. The plaintiffs cite the following errors on appeal.
1. The trial court erred in finding that the plaintiffs were only entitled to a commission of 25¢ per cubic yard instead of 50¢ per cubic yard.
2. The trial court erred in finding plaintiff failed to prove by a preponderance of the evidence that an agreement existed concerning rental and payment for the equipment.
3. The trial court erred in assessing court costs against plaintiffs.
We affirm that portion of the trial court decision awarding 25¢ commission per cubic yard to the plaintiff Emmett Smith. While there is conflicting testimony as to the amount agreed upon, this is a factual determination and one which we do not find to be clearly wrong.
The plaintiffs also contend that the trial court erred in not finding an agreement between the plaintiffs and defendants concerning the equipment rental. We find the trial court was correct in finding that Emmett Smith did not establish by a preponderance of the evidence that he was entitled to relief based on an action in contract. However, we find he is entitled to relief in quasi contract since the equipment rental redounded to Carue Hudson's benefit. LSA-C.C. art. 2293 provides that:
Quasi contracts are the lawful and purely voluntary act of a man, from which there results any obligation whatever to a third person, and sometimes a reciprocal obligation between the parties.
The jurisprudence has applied the principles of quasi contract in numerous cases, where absent an express agreement or meeting of the minds, one party performed services for the benefit of another. Commercial Employment Service, Inc. v. Morphy, Makofsky and Masson, Inc., 436 So. 2d 719 (La.App. 4th Cir.1983). The elements of a cause of action in quasi contract, were set forth in Hobbs v. Central Equipment Rentals, 382 So.2d 238 (La. App. 3d Cir.1980), writ denied, 385 So.2d 785 (La.1980), as follows:
The essential elements of quasi contracts are a benefit conferred on the defendant by the plaintiffs, an appreciation by defendant of such benefits, and acceptance and retention by the defendant of such benefits under circumstances such that it would be inequitable for him to retain the benefits without payment of the value therefor. Teche Realty & Investment Co., Inc. v. A.M.F., Inc., 306 So.2d 432 (La.App. 3 Cir.1975) writ denied, 309 So.3d 681 (La.1975).
Once a quasi contract is formed, Civil Code Article 2298 gives the standard to which the negotiorum gestor is held in the management of the affairs of another. LSA-C.C. Article 2298 states in pertinent part:

*787 In managing the business, he is obliged to use all the care of a prudent administrator.
Id. at 244.
We find that the plaintiffs have established all the necessary elements of a quasi contract. The record establishes that the plaintiff, Emmett Smith, and defendant, Carue Hudson, maintained a business relationship with regard to the Barber Bros. contract. Mr. Hudson's representations and voluntary actions (including his silence about payment or non-payment of the rental equipment) formed the basis of a quasi contract with Mr. Smith for the rental of the equipment. Furthermore, the defendants obviously benefited from the equipment rental and Carue Hudson, a heavy equipment operator, must have appreciated the value and expense of such equipment being available for his use. The fact that Carue Hudson and his son used the equipment for the various projects enumerated above would lead a reasonable person to conclude that it would be inequitable for him to retain the benefits without payment therefor.
The question now becomes what amount of damages are the plaintiffs entitled to. LSA-C.C. art. 2324.1 provides:
In the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury.
The jurisprudence has often referred to the principles of quantum meruit in assessing damages under LSA-C.C. art. 2293. A summary of the various methods of calculating damages under the theory of quantum meruit were summarized in Fullerton v. Scarecrow Club, Inc., 440 So.2d 945 (La.App. 2d Cir.1983), and applied in Marine Design, Inc. v. Zigler Shipyards, 791 F.2d 375 (5th Cir.1986) as follows:
Louisiana's courts generally recognize that a plaintiff who establishes his right to be compensated on quantum meruit should recover as much as he reasonably deserves for his services and for the time and labor required for them. There is no specific test which must be applied to determine the reasonable value of such services. It is a matter of equity depending upon the circumstances of each case. Jones v. City of Lake Charles, 295 So.2d 914, 917 (La.App.1974). See also Fullerton; Southern Mosaic Tile, Inc. v. Alessi, 411 So.2d 601 (La.App.1982); Roy Berard & Sons, Inc. v. Latham, 334 So.2d 804 (La.App.1976) (Watson, J.). The plaintiff, however, may recover neither more than the actual value of its services and materials nor more than the amount by which the defendant was enriched. Cabot, Cabot & Forbes Co. v. Brian, Simon, Peragine, Smith & Redfearn, 568 F.Supp. 371 (E.D.La.1983).
Id. at 378 and 379.
At first blush it appears as though the plaintiffs should be awarded the full cost of the rental equipment which they incurred. However, since their recovery is based on the theory of quasi contract we must consider not only the cost incurred by the plaintiffs but also the benefit which the defendants derived at plaintiffs' expense.
As the court in Hobbs supra pointed out, the plaintiff is required under the standards set forth in LSA-C.C. art. 2398 to act as a prudent administrator in his dealings for another.
Based on the record before us, we find that the plaintiffs were less than prudent in their attempts to supply heavy equipment to the defendants for the Barber Bros. contract. The bulldozers rented were too small to adequately perform the mixing requirements and were rented for more time than was actually needed. We also find that the defendants were less than fair in their dealings with Mr. Emmett Smith not to mention the implications of the bankruptcy proceedings pending at the time of their contract with Barber Bros.
We find that the record supports an award of $6,947.41[1] based on the testimony *788 of Carue Hudson, III stating that he operated a dozer for two days spreading gravel, and Carue Hudson, Jr.'s testimony that he used the equipment for approximately 64 hours performing various projects, as well as the fuel usage amounts indicated on the various rental invoices.
Plaintiffs final assignment of error contends that the trial court abused its discretion by assessing plaintiffs with costs of their claim against defendants. We agree.
In Versai Management, Inc. v. Monticello Forest Products Corporation, 479 So.2d 477 (La.App. 1st Cir.1985), we held that:
Although a trial judge has great discretion in assessing costs, the general rule is that the party cast shall pay all costs of a suit. This rule is rooted in the principle that the party whose behavior unjustifiably causes costs to be incurred ought to pay them, unless some circumstance renders an alternative assessment equitable. (La.C.C.P. art. 1920) (citations omitted).
Id. at 486.
We were not favored with reasons by the trial court for its assessment of costs to plaintiff, an exception to the general rule, since plaintiffs prevailed. The fact is that defendants admitted owing Emmett Smith at least 25¢ per cubic yard commission on what Barber Bros. purchased and that defendants clearly enjoyed a substantial benefit from the equipment rental. In view of this, the defendants' refusal to pay is unjustifiable behavior warranting assessment of costs against them.
For the above and foregoing reasons we affirm the trial court's award of 25¢ per cubic yard on the 14,164 cubic yards sold to Barber Bros. We reverse the trial court's refusal to grant plaintiffs claim for reimbursement for equipment rental and award $6,947.41 to plaintiffs. Further, we reverse the trial court's assessment of costs to the plaintiffs and accordingly assess defendants with costs of the trial court and for this appeal.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
NOTES
[1] Based on Industrial Construction Equipment Rental's invoices dated 12/11/84 and 1/08/85, the per day rental of a Drott 50 Excavator is $200.00 per day. The testimony of Carue Hudson established that he used an excavator at least 8 days. The record also indicates a subsequent 2 day rental of an 880C Case excavator, therefore we conclude that the Drott 50 was used for 6 days, and we accordingly charge Mr. Hudson $1,200.00 therefor. In addition, he is to pay all charges related to the transportation ($350.00), fuel ($84.50), permits ($70.00) and taxes ($67.38) on said equipment, totalling $1,771.88. We note that these incidental expenses, excepting fuel, would have been the same regardless of the duration of the rental.

Although Mr. Hudson stated that the 1150 C dozers which Emmett Smith rented were too small for his needs and that he did not use them, the invoices from Marco Equipment Rentals, Inc. dated 12/26/84, 2/8/85, 2/22/85 indicate that the equipment was in fact used, as a minimum of 38 gallons of fuel was used per each invoice. According to the fuel usage on these invoices, we conclude that Mr. Hudson, or someone acting on his behalf, operated the equipment a minimum of 2 days during each billing period. Based on the invoice dated 2/22/85, the rental cost of a 1150 C dozer for 2 days is $1,288.27, which includes cleaning charges, 40 gallons of fuel, transportation and taxes. The same amount of fuel was used on the invoice dated 12/26/84, and although the equipment was rented for 20 days, we only charge Mr. Hudson with 2 days rental, totalling $1,288.27. Furthermore, invoice dated 2/8/85 indicates fuel usage of 38.1 gallons, making this 2 day rental charge $1,285.42.
Invoice dated 2/22/85 indicates that a Case 880 C excavator was rented from Marco Equipment Rentals, Inc. for the same 2 day period as the 1150 C dozer, with fuel usage of 56.9 gallons, and we accordingly charge Mr. Hudson the sum of $1,313.57 for rental of the Case 880 C excavator, which includes cleaning charges, fuel, transportation and taxes.